62 So.2d 437

**ADAIR v. ADAIR.**

3 Div. 634.

Supreme Court of Alabama.

Nov. 13, 1952.

Rehearing Denied Jan. 19, 1953.

294

Walter J. Knabe and T. E. Martin, Montgomery, for appellant.

W. Ervin James and Hill, Hill, Whiting & Harris, Montgomery, for appellee.

BROWN, Justice.

This litigation originated in a proceeding for divorce from bed and board filed by the wife against the husband on November 1, 1949, under the provisions of Chapter 2, Title 34, Code of 1940, more particularly under §§ 36 and 37 of said title. The bill following the prescription of the statutes alleges the names and residences of the parties, the date of their marriage, "to wit July 22nd, 1914, and that they lived together as husband and wife until to wit October 24th, 1949." The bill further alleges that said respondent has since their marriage "committed actual violence on her person attended with danger to life or health, or that from his conduct there is reasonable apprehension of such violence"; that the complainant is over fifty years of age and has no income whatsoever; that respondent is in good health, is a professional man, has an excellent income and has large property holdings.

After prayer for process against respondent giving his name, the bill further prays for a reference; that she be granted a temporary allowance for her support pending the hearing of the cause; for reasonable solicitor's fees; "that upon final hearing the Court will render a decree granting to Complainant a divorce from bed and board and will grant to her in said decree permanent allowance for maintenance and support; that Respondent be required to pay a reasonable fee to solicitor for Complainant for his services, and Complainant prays for such other, further and different relief as may be proper in the premises." Thus the court's statutory and limited jurisdiction was invoked by the bill. Martin v. Martin, 173 Ala. 106, 55 So. 632.

After demurrer filed and overruled, the respondent answered admitting the allegations as to the age and residence of the parties; the fact they were married and the date thereof and that they lived together as husband and wife, but denied that they separated on to wit, "October 24, 1949, as alleged in paragraph two of said bill." Respondent alleged that "he and the complainant are still residing together in the same house." All other allegations in paragraph three of the bill of complaint were denied and strict proof thereof demanded. The respondent's answer admitted that the complainant is over fifty years of age, that respondent is a professional man and all other allegations of paragraph 4 of the bill were denied and strict proof thereof demanded. The answer of the respondent then alleges:

"Further answering paragraph four of the bill of complaint, respondent says

that complainant owns considerable property, that the title to the house and lot where complainant and respondent presently reside is in the complainant and is reasonably worth $25,000.00. Respondent further says that on, towit, two years ago the complainant took from respondent the sum of $12,000.00 and that she has ample means for her own support.

"Wherefore, respondent says that the complainant is not entitled to relief as prayed for in her said bill of complaint, neither is she entitled to any alimony whatsoever and your respondent prays judgment hereof."

The case was submitted December 13, 1949, and the court on the same day entered the following final decree:

"It is, therefore, ordered, adjudged and decreed by the Court

"That complainant and respondent live separate and apart from bed and board.

"And it further appearing to the Court that the parties have reached an agreement, which agreement is made known to the Court in open Court, and the Court having considered same and being of the opinion the same is fair and equitable, now, therefore,

"It is further ordered, adjudged and decreed as follows:

"1. That R. T. Adair be, and he is hereby permitted to occupy the real estate in the name of M. Pollard Adair, and the real estate in the name of M. Pollard Adair and R. T. Adair, jointly, he shall have full use of said property, shall pay all taxes and insurance, and shall maintain said property, and shall not be required to account for the income in any way, he shall have sole and exclusive possession of all the said property as long as he carries out the provisions of this decree.

"The said R. T. Adair shall deliver to the said M. Pollard Adair one United States Series E bond of a face value or maturity value of $1,000 now in her name, and also deliver to her any other bonds solely in her name; he shall also deliver to the said M. Pollard Adair the motor vehicle license and title to the 1948 or 1949 Lincoln Continental convertible now in her possession in the manner required by law, and shall take all action necessary to transfer both title and license to complainant; that the respondent deliver to complainant the chinaware, together with one radio, as agreed upon between the complainant and respondent.

"3. That the respondent shall pay to complainant the sum of $225 per month, the first payment to be made on December 15, 1949, and on or before the 15th of each month thereafter until further order of this Court, for her separate maintenance and support, said payments to be made to the Register in Chancery of the Circuit Court of Montgomery County in Equity; said payments to be in lieu of all other obligations of any kind, nature and description that she has against respondent as his wife for her support.

"4. It is further ordered, adjudged and decreed by the Court that a reasonable attorney's fee for attorneys for the complainant shall be the sum of $1000, and it is further part of the agreement between the parties and their attorneys that the complainant shall pay said fee, and complainant in open Court hereby authorizes the Register of the Circuit Court of Montgomery County in Equity to pay over to said attorneys for complainant the first $1,000 paid into the court under this Decree.

"5. Each party being, and is hereby enjoined from interfering or molesting the other party in any way.

"6. The costs of this proceeding are hereby taxed against the respondent, for which let execution issue.

"7. All other questions reserved."

On November 13, 1950, the complainant filed motion, under oath, alleging that respondent had failed to make the payment as provided in the decree of December 13, 1949, and prayed that an order be entered requiring that defendant show cause why he should not be adjudged in contempt.

Such order was entered on the date of filing the motion. On November 29, 1950, the matter of ascertaining the truth of the allegations in said motion was, by the court, referred to the register.

On January 9, 1951, the register issued a writ of garnishment to O. L. Campbell alleged to have "or is believed to have in his possession or under his control, money or effects belonging to the Respondent * * *." On January 12, 1951, the garnishee Campbell filed a sworn answer, denying that he was indebted to or had assets of the respondent in his possession.

On January 17, 1951, respondent filed *pro se* a petition for reduction of "separate maintenance money" granted to the complainant in the final decree of the court in November 1949, alleging in said petition as follows:

"That respondent is a physician of advanced years and declining health; and that because of these infirmities, has been forced to progressively curtail his practice of medicine. That for this reason his income has steadily declined, but that the expenses of maintaining an office and a home are steadily increasing. That the sum of $225 a month is more than respondent can pay.

"3. That respondent has tried to comply with the Court's orders but has found it impossible.

"Respondent therefore petitions this Honorable Court to consider the above-referred-to circumstances, and modify its form of decree by giving a reduction in the amount of separate maintenance money, to an amount not in excess of $100 a month."

Said petition was set for hearing by the court February 9, 1951.

On the 26th of January, 1951, on sworn application of the complainant, a second writ of garnishment was issued to "Y. M. C. A., North McDonough Street, Montgomery, Ala.", with the usual and appropriate recitals as to indebtedness.

On January 26, 1951, the register filed his report containing the following findings, recitals and conclusions:

"Complainant, being duly sworn, stated that she had received no payments for alimony for the past two months and that respondent was in arrears on the 15th of November, 1950, in the total sum of $450.00. These payments were by the provisions of the Decree of Divorce entered in this cause to be paid into the registry of this Court monthly on the 15th day at the rate of $225.00 per month, and the Register checked his records and found that the payments for the months of October and November, 1950 had not been paid, and remain unpaid to this date.

"Respondent, being duly sworn, stated that his income has been considerably reduced during this year as compared to the preceding years and that he is unable to make the payments as directed in the former Decree, however, he offered no substantial proof of his present income or any concrete idea of his probable income in the future. Respondent neither prayed for a reduction of his payments in view of his stated decreased income, nor did he give any indication of any amount that he might be able to pay to Complainant.

"Upon consideration of the above testimony, the Register is of the opinion and finds as follows:

"1. That respondent is in arrears in the payments into the registry of this Court for the benefit of complainant, to the 15th day of November, 1950, in the total sum of $450.00.

"2. That respondent has shown to the Register no valid reason for his failure to make the payments as directed, and that he should be given to the 12th day of December, 1950, at 12 o'clock Noon, to pay into the registry of this Court the sum of $450.00 as alimony due the complainant, for the months of October and November, 1950.

"3. That respondent be taxed with the costs of this proceeding.

"Respectfully submitted, this the 8th day of December, 1950."

On February 19, 1951, the court proceeded to a hearing on the petition of the respondent filed *pro se* January 17, 1951, continuing the hearing to February 22, 1951, when the respondent produced as witnesses Dr. R. E. Tisdale and Dr. Titus L. White. Their testimony goes to show that the respondent turned over to or sent patients to each of such witnesses for attention, such as night calls and the maternity practice. They gave expert testimony to the effect that a physician 70 years of age would not be able to carry on an extensive medical practice, although he is mentally alert and physically able to do office practice.

The respondent testified in support of his application for modification, his testimony going to show that after the final decree of date December 18, 1949, was entered and the possession of the real property jointly owned by the parties and the home place on Union Street was turned over to him by the court, the title to which was in the complainant, the respondent voluntarily and without the consent of the complainant proceeded to make extensive additions to the property, and the additions to the business property was at a cost, as he stated, of at least $27,000 and the monthly payments due to be made for such additions exceeded the income from the properties, which he had to supplement. Respondent further testified that he suffered losses in the sale of property, in the payment of commissions and attorney's fees. His testimony also shows that he attended Mayo's Clinic for a check-up on his physical condition before the final decree of November, 1949; that he is 68 years of age and could not do the work he was able to do at the age of 30 and that he was advised to curtail his practice by Mayo's Clinic.

His testimony further shows that he paid Bear Lumber Company for the work of remodeling the business property from $12,000 to $12,500; that the excess in the monthly payments which he had to pay over and above the income from the property was $82; that complainant, his wife, is a graduate nurse about 63 or 64 years of age; that she had high blood pressure which is not debilitating and that she has never earned a "nickle in her life."

His testimony further shows that he is still engaged in the practice of his profession, mostly office practice, for which he maintains an office in the jointly owned property of the parties and that he hires and pays a receptionist at his office a salary of $15 per week; that he keeps no books, receives cash fees, a part of which he deposits in the bank once or twice a week; that he is paid a salary of about $115 per month from the State as the physician for the Negro Schools of Montgomery.

After hearing evidence touching the petition to modify the final decree of December 13, 1949, the court on March 15, 1951, without taking notice of the report of the register based on testimony given ore tenus before the register which had the force and effect of a verdict of a jury, O'Rear v. O'Rear, 227 Ala. 403, 150 So. 502, modified the first mentioned decree by reducing the allowance to the complainant from $225 to $150 and embodied in the last mentioned decree the following: "That upon the expiration of six months from this date either party may petition the Court in writing, apprising the Court of any change in his or her financial condition, and jurisdiction is expressly reserved for the making of any further order necessary to meet such changed conditions."

On petition of complainant filed March 28, 1951, the court ordered the garnishee "Y. M. C. A. (to) pay such amounts as are due to R. T. Adair, to Gunter-Nicrosi Real Estate Agency, and that said company pay to the register of this court such sum as is due for rent up to and including March 13, 1951, and that the register after payment of costs pay the balance to the petitioner, M. Pollard Adair." This order was entered March 30, 1951 and seems to have been by consent.

The foregoing is the background for the proceedings which we now discuss.

In a pleading sworn to by Dr. Adair on May 16, 1951, more than a year after the decree of December 13, 1949, was entered, characterized by the pleader as a "peti-

tion," it was prayed that the court re-examine and rehash the entire litigation between Adair and his wife and adjudge and decree that the wife "has received her full and just share from the estate of petitioner; * * * that the legal title to that certain real property heretofore described as Lot Number Twelve (12), Block Twenty-Nine (29) of the Goldthwaite Plat as recorded in the Office of the Judge of Probate of Montgomery County, Alabama in Plat Book 1, page 10, be divested out of M. Pollard Adair and invested in the petitioner, and that the said M. Pollard Adair be required to convey said property to petitioner by warranty deed * * * that the Court will further modify said decree of divorce to eliminate the provisions for payment of alimony by petitioner; and petitioner prays for such other, further and different relief as may be proper in the premises."

Said Lot 12, in short, is the property purchased by Adair in the year 1934 or 1935, which was at his request and direction conveyed by warranty deed to his wife, in whom the title has remained for sixteen years or more and has been assessed by him for taxes in her name.

The trial judge in an opinion filed preceding a decree overruling a demurrer to said bill, upholds the equity of the bill filed by Dr. Adair on May 16, 1951, on the theory, to quote the language of the opinion: "Thus it appears that under appropriate circumstances, *the Court may, in its judicial discretion, make an allowance or an award* in gross to the wife out of her husband's estate in the case of legal separation from bed and board. *Such an allowance or award could be in lieu of all other allowance from or interest in her spouse's* estate." [Italics supplied.]

▮ The opinion filed in support of the ruling on demurrer to the alleged "petition", it appears, was largely influenced by the *dictum* used *arguendo* in the opinion of the Court in Ex parte State ex rel. Tissier, 214 Ala. 219, 221, 106 So. 866, 868, that

"* * * The property rights in the case of a limited divorce have been held generally to remain unchanged (Ellison v. Mayor of Mobile, 53 Ala. 558), except in so far as, under the statute and the decree of separation, *the court, exercising a sound discretion,* expressly provided for an allowance to the wife *and for the disposition of the properties of the parties.*"

The Tissier case was an original petition for mandamus to annul the order of the Circuit Court made in a pending divorce proceeding by the wife for limited divorce, ordering a reference to the register of the court "to ascertain the amount of alimony *pendente lite* to be allowed her." The power of the court to divide the property of the parties was not presented. Nor does the opinion of the court in Ellison v. Mayor of Mobile, 53 Ala. 558, support any such conclusion or procedure, but is to the contrary. The substance of that opinion is stated in the third headnote of the report of the case, as follows: "A deed to land made by a femme covert in 1814, in which the husband did not join, not acknowledged on privy examination apart from the husband, and duly certified, as required by that statute,—will not divest her title, although she had obtained a divorce a mensa et thoro from the husband; such divorce did not dissolve the bonds of matrimony, or enlarge the capacity of the femme covert to convey." The *dictum* in the Tissier case, supra, was not authoritative and not binding upon the courts. Newton v. City of Tuscaloosa, 251 Ala. 209, 36 So.2d 487; Realty Investment Co. v. City of Mobile, 181 Ala. 184, 61 So. 248; Roquemore v. Sovereign Camp, W. O. W., 226 Ala. 279, 282, 146 So. 619.

The demurrer to said pleading takes the points that it is without equity; that "the petition shows affirmatively that the parties hereto entered into an agreement and that said agreement has been confirmed by this Court; the petition does not allege that there has been any change in the status of the parties justifying any change in payments; the petition shows affirmatively that the property set forth is the property of the said M. Pollard Adair", and other grounds.

▮▮ Without affirming or denying that a nisi prius court may in the first instance

have some discretion as to the form of relief to be granted, we are clear to the conclusion that after the court has acted in pursuance of an agreement between the parties as to the form, nature and extent of the relief and has accepted and confirmed the agreement, there is left no room for the exercise of discretion in the absence of changed conditions which show an equitable right to modification under the holding in the Colton case cited below. When the court entered the decree of December 13, 1949, it exhausted whatever discretion it at that time may have had. Independent Pub. Co. v. American Press Ass'n, 102 Ala. 475, 494, 15 So. 947.

■ We affirm what was said in Colton v. Colton, 252 Ala. 442, 41 So.2d 398, as to the power and authority of the Court to modify monthly allowances for the wife's maintenance running into the indefinite future and payable if needs be from the future earnings of the husband, where changed conditions and circumstances show the allowance to be burdensome and an equitable right of the husband to have modification.

In Swendick v. Swendick, 221 Ala. 337, 128 So. 593, 594, it was observed: "It is well settled that: 'Where a person who purchases land in the name of another and pays the consideration money himself, is under a natural or moral obligation to provide for the person in whose name the conveyance is taken, such as the wife or child, no presumption of resulting trust arises, but the transaction will be treated prima facie as an advancement for the benefit of the nominal purchaser. The inference which the law permits to be drawn in this class of cases is based on the common knowledge and experience of mankind in regard to the motive that usually accompanies transactions of this character.' 26 R.C.L. 1225, § 71, and authorities cited under notes 8 and 9.

"The presumption that an advancement or gift was intended is not however a presumption of law, but one of fact, and may be overcome by proof of the real intent of the parties as reflected in the conditions and circumstances attending the transaction. * * *"

■■ Under the principles of law stated in the Swendick case, the burden is on petitioner to allege that the conveyance of the residence property was not a gift by the husband to the wife and in the face of the long acquiescence as to the status of the title in the wife—for sixteen years or more—to prove such allegation by clear and convincing evidence. We are not of opinion that the allegations in the pleading, whether it be a bill or petition, to the effect: "That petitioner took delivery of the deed to said property and the said M. Pollard Adair acquiesced in the use of her name as grantee after her discovery that said property had been taken in her name; that she treated said property as being the property of petitioner until shortly before filing her action for divorce," and "that it was always his intention for M. Pollard Adair to hold said property in trust for the use and benefit of petitioner", meet the burden resting upon Dr. Adair, nor do they sustain the allegations made. These averments, more in the nature of conclusions than the averment of facts, indicate afterthought induced by the litigation and do not "overcome" the presumption of a gift arising out of "conditions and circumstances attending the transaction." Smithsonian Institute v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793.

We find nothing in the cases where only a limited divorce is sought—divorce from bed and board—which sustains the power of the court to take from the wife, property, the title to which is vested in her, and give it to the husband in an effort to effect an equal division of their joint estate. Our decisions, which are in accord with the great weight of authority dealing with that question and the effect of the married woman's statutes, are to the contrary. Code 1940, Tit. 34, § 65 et seq.; Allen v. Hamilton, 109 Ala. 634, 19 So. 903; American Nat. Bank & Trust Co. v. Powell, 235 Ala. 236, 178 So. 21; 27 C.J.S., Divorce, § 291, p. 1113.

■ In fact, the legal effect of the wife's selection and pursuance of the remedy for limited divorce is to save for herself the right of her dower interest in the husband's estate if he predeceases her and the right

to share and participate in the division of his personal estate and to have a homestead or an allowance in lieu thereof of the value of $6,000. Code of 1940, Tit. 7, § 662, Pocket Part; McWilliams v. McWilliams, 216 Ala. 16, 112 So. 318; Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244; Code of 1940, Tit. 7, § 661, Pocket Part.

In the McWilliams case, cited above, this court, speaking by Mr. Justice Sayre, observed: "By her application to the court (section 7423 of the Code [Code 1940, Tit. 34, § 36]) setting forth the fact that she desired only a divorce from bed and board, appellee avoided the effect of section 7431 [Code 1940, Tit. 34, § 44], which is that a wife divorced a vinculo cannot under any circumstances claim dower at the death of her husband or distributive share in his personal estate. McLaughlin v. McLaughlin, 202 Ala. 16, 79 So. 354; Chamboredon v. Fayet, 176 Ala. 217, 57 So. 845; 2 Schouler, Dom.Rel. (6th Ed.) § 1943. By the same token she also reserved to herself whatever benefit may hereafter accrue to her under the laws of Florida to which state appellant has removed his residence —more liberal to the widow than the law of this state—in the event her husband shall die first. A decree of divorce from bed and board does not remove the vinculum of marriage. Ellison v. Mayor, 53 Ala. 558; Smith v. Smith, 45 Ala. 264. Such a divorce is only a legal separation; the marriage continuing in regard to everything not necessarily withdrawn from its operation by the decree. * * *

"Section 7424 of the present Code (1923) [Code 1940, Tit. 34, § 37] authorizes the court, in case of a divorce from bed and board, 'to make an allowance to the wife out of the estate of the husband.' And so, in case of divorce a vinculo, the language of the statute (section 7418 of the Code [Code 1940, Tit. 34, § 31]) is that the court (judge) 'must decree the wife an allowance out of the estate of the husband'; but it has never been supposed that this required a division of property between the husband and wife. * * *" 216 Ala. at pages 17 and 18, 112 So. at page 319.

In the more recent case Roubicek v. Roubicek, 246 Ala. 442, 449, 21 So.2d 244, 250, wherein an absolute divorce was granted on a bill filed by the wife and where the title to the home was in the wife though purchased by the husband, the home was ordered sold by decree of the circuit court and the proceeds equally divided between the wife and the husband. On appeal here it was held: "While it is the general rule that where one buys land in the name of another and pays the consideration money, a resulting trust will be declared in favor of the purchaser in the absence of all rebutting circumstances evincing a contrary purpose, this is only a rule of presumption. Lauderdale v. Peace Baptist Church [ante, 246 Ala. p. 178], 19 So.2d 538.

" 'Such a presumption will not arise however, when the conveyance is to the wife with purchase by the husband, as he is considered under legal or moral obligation to make provision for her, and a gift will be presumed.' Marshall v. Marshall, 243 Ala. 169, 8 So.2d 843, 844."

Section 662, Title 7, Code of 1940 provides *inter alia:* "And in no case, and under no circumstances, shall the widow and the minor children, or either of them, be deprived of homestead or two thousand dollars (now $6,000.00) in lieu thereof, if they or either of them apply therefor in manner as herein provided before final distribution of the decedent's estate."

On final submission on pleadings and proof, the proof consisting of testimony taken *ore tenus,* the circuit court entered a decree requiring the wife, M. Pollard Adair, to convey to R. T. Adair "by statutory warranty deed that certain real property described as Lot Number Twelve (12), Block Twenty-Nine (29) of the Robert Goldthwaite Plat as recorded in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 1, page 10, said Lot fronting Fifty-nine (59) feet on the west side of Union Street and running back of equal width Two Hundred (200) feet; and that upon her failure so to do within thirty days from the date of this decree, the Register of the Court is hereby empowered and directed to execute to petitioner a deed conveying to him all of the right, title and interest of M. Pollard Adair in said property.

"That petitioner forthwith pay to M. Pollard Adair all alimony payments due and payable through the 30th of November, 1951, as provided by the Court's decree of March 15, 1951.

"That the decree of divorce is further modified to eliminate therefrom the provisions for the payment of alimony to the complainant by the respondent.

"That upon the final payment by Respondent of alimony through November 30, 1951, the Complainant will have received her full and just share from the estate of R. T. Adair as his wife and all allowances and awards heretofore made to Complainant by Respondent are hereby adjudged to be awards of alimony in gross and in lieu of all other allowances from or interest in the estate of R. T. Adair." The costs were taxed against R. T. Adair. Hence this appeal.

The assignments of error challenge the decree generally as erroneous and more specifically in directing M. Pollard Adair to convey property to R. T. Adair, in eliminating further alimony payments; in decreeing that M. Pollard Adair had received her full share of the estate of R. T. Adair, and in overruling the appellant's demurrer to the bill or petition. The assignments of error also challenge certain rulings of the court in the rejection of evidence and in not allowing solicitor's fees to the appellant's attorney.

Viewing the case as presented by the record in its full scope, purpose and effect, the issues are broad and embrace all the facts and circumstances originating in the cause of the divorce. There is little or no conflict in the testimony given by the parties and their witnesses. It is without dispute that they were married in 1914 and have lived together as husband and wife for thirty-seven years. At the time of their marriage Adair, the husband, was a young physician and his wife a registered nurse. They located in Montgomery soon after their marriage and Adair entered upon the practice of his profession and was aided by his wife in keeping his office and his home. He established a valuable practice from which he received a large income. At one time, as the evidence goes to show, his income amounted to from twenty-nine to thirty thousand dollars per year. The wife kept his books, administered first aid to his patients until they were committed to the hospital, kept the home in which they lived, performing generally the work of the housewife and in his absence to complete his education, she, with the aid of a receptionist, collected old bills and garnered considerable money to their general benefit. During their most active years he was a generous spender, apparently a good sport, until the destruction of the *entente cordiale* of the marriage by his misconduct in having dalliances with a young woman, resulting in her pregnancy and his going with her to another state and living with her for a while. Before this incident he was very generous to his wife. He gave her valuable diamonds and she in turn gave him a valuable watch, which she says was worth $700. During the time of his generosity he purchased the property on Union Street in 1934 or 1935, taking the deed in the name of his wife. This status of the title continued until the final decree in this proceeding was entered. In the meantime, covering a period of 16 years, he assessed the property on Union Street in the name of his wife and paid the taxes thereon. He also purchased property on Monroe and McDonough Streets, taking title in the name of himself and his wife as joint owners and purchased other property taking the title in the wife's name. Immediately upon the property being turned over to his entire control under the decree of divorce entered on the 13th of December, 1949, Dr. Adair proceeded to incumber the property by making extensive improvements so that the rents received from the property were not sufficient to meet the costs of the improvements made, which the evidence shows amounted to over $27,000. He defaulted in the payment of alimony and the wife resorted to the court to exercise its punitive powers to compel the payment of the alimony and had garnishments issued affecting the payment of the rents on the jointly owned property. All of the property which the wife claimed to own, including household furnishings, oriental rugs and wearing

apparel, was not turned over to her. The evidence further shows that the proceeds of the property owned individually by the husband and sold by him were used to meet the past due payments of alimony under the former decree of the court.

The proceeds from the sale of the property jointly owned by the parties, the wife being entitled to a half interest therein, together with the home on Union Street ordered to be conveyed to the husband, constituted what the court's decree holds to be an equitable division of the husband's estate between the parties, as the basis for denying to the appellant any right to support. The evidence further shows that during the halcyon days, before the cause for the breaking up of the cordial relations between the parties, Dr. Adair made to his wife presents of valuable oriental rugs which were placed in the home where they lived together as husband and wife until his wrongful conduct broke up the home.

The evidence further shows that Dr. Adair is 68 years of age and that he has somewhat curtailed his practice. The wife, according to her testimony, is 65 years of age, unable to work and earn money in consequence of his assault upon her, which brought about this divorce proceeding. She is suffering from high blood pressure and is in destitute circumstances, according to her testimony, corroborated by Dr. Adair.

Sections 36 and 37, Title 34, Code of 1940, provide:

"§ 36. The judge may decree a divorce from bed and board for cruelty in either of the parties, or for any cause which would justify a decree from the bonds of matrimony, if the party applying therefor desires only a divorce from bed and board.

"§ 37. The proceedings in such cases are the same in all respects, and the court has the same power to make an allowance to the wife out of the estate of the husband, and provide for the custody and education of the children of the marriage, as provided in this chapter for divorces from the bonds of matrimony."

The decree of the circuit court runs counter to the provisions of the statute, which authorize the court to make an allowance to the wife "out of the estate of the husband." The authorities seem to be uniform that in the absence of a statute so authorizing, the court has no authority to divest the wife of her property and give it to the husband in order to effect an equal division of property between them. 27 C.J.S., Divorce, § 291, p. 1113. Nor is such relief within the scope of the court's reserved power to modify monthly allowances of alimony.

We have not treated the insistence of the appellant, seeking recovery of her personal effects and household furnishings, since in the absence of a cross bill such affirmative relief is not grantable.

The decree of the circuit court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

All the Justices concur.