Steve Rush and his wife Kim Rush petition for a writ of mandamus directing the trial court to vacate its orders compelling them to arbitrate their fraud and wantonness claims against Allied-Bruce Terminix Companies, Inc., d/b/a Terminix Service ("Terminix Service"); Terminix International, Inc.; Hal Worthington; and Mike Hobaugh. The Rushes filed separate complaints; however, the trial court consolidated the two cases and ordered that all claims be arbitrated. We deny the writ.
The Rushes are residents of Dale County. Terminix Service, a franchisee of Terminix International Company, L.P., a limited partnership, is an Arkansas corporation with local offices in a number of states; it has an office in Enterprise, Alabama. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265 (1995). Terminix International, a general partner of Terminix International Company, is a corporation organized under the laws of a state other than Alabama; it has its principal office in Memphis, Tennessee, and has several offices in Alabama. Worthington and Hobaugh are employees of Terminix Service.
The Rushes' complaints are based on allegations of fraud and wantonness in connection with the defendants' performance under a "Termite Protection Plan" that Terminix Service mailed to the Rushes shortly after the construction of their house. Under that contract, Terminix Service agreed "to protect" the Rushes' house "against the attack of subterranean termites"; to reinspect periodically; to provide any "further treatment found necessary"; and to repair, up to the cost of $100,000, damage caused by new termite infestations.[1] The contract, which designated "Steve Rush" as a "Purchaser," was executed by the manager of the local Terminix Service office, as well as by the president of Terminix International, which "guarantee[d] *Page 1177 
the fulfillment of the terms of [the] Plan."
The contract called for annual renewal for a fee; the Rushes paid an annual fee to Terminix Service for 9 or 10 years, until the present dispute arose, with both Steve Rush and Kim Rush signing as a "Customer" on "Terminix Reinspection Report[s]." After termite infestation was discovered in their house, the Rushes made a claim under the contract for retreatment (which Terminix Service provided) and for the cost of repairs due to termite damage. Terminix Service arranged and paid for over $17,000 in repairs to the Rushes' house. The Rushes actively participated in supervising those repairs.
The defendants moved to compel arbitration of the Rushes' claims, based on the following arbitration provision in the contract:
 "The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to the interpretation, performance or breach of any provision of this contract which relates to new termite damage, as defined in this Agreement or the above Plan, shall be settled exclusively by arbitration. Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association before three arbitrators appointed by the American Arbitration Association. The arbitration award shall be final and binding on both parties. Judgment upon such arbitration award may be entered in any court having jurisdiction. If any part of this provision or if this provision is held to be invalid or unenforceable for any reason, the remaining terms and conditions of this contract shall remain in full force and effect. Claims relating to payment disputes shall not be subject to arbitration.[2]
The dispositive issue is whether the Rushes agreed to arbitrate their claims.
The Rushes argue that they are not obligated to arbitrate their claims because they never signed a document containing an arbitration provision.[3] However, after carefully reviewing the record and the briefs, we agree with the defendants that, under the particular facts of this case, the Rushes' signatures are not necessary to bring them within the arbitration provision set out in the "Termite Protection Plan." Section 2 of the FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." (Emphasis added.) The existence here of a written arbitration provision is not in dispute. The Rushes argue that the absence of their signatures on the contract conclusively establishes a lack of mutual assent on their part to the arbitration provision. However, the FAA requires only that there be a "written provision" in a "contract"; it does not specify that a party's assent to the terms of a contract containing an arbitration provision can be evidenced only by that party's signature.
Whether a contract exists must be determined under general state-law contract principles. Crown Pontiac, Inc. v. McCarrell,695 So.2d 615 (Ala. 1997). The purpose of a signature on a contract is to show mutual *Page 1178 
assent, see Ex parte Holland Mfg. Co., 689 So.2d 65 (Ala. 1996); Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297 (Ala. 1986); Ex parte Pointer, 714 So.2d 971 (Ala. 1997); however, the existence of a contract may also be inferred from other external and objective manifestations of mutual assent. Unless a contract is required by a statute to be signed (the FAA contains no such requirement), or by the Statute of Frauds to be in writing (the contract here is not subject to Alabama's Statute of Frauds, Ala. Code 1975, § 8-9-2, which requires the signature of the party against whom enforcement is sought), or unless the parties agree that a contract is not binding until it is signed by both of them (there is no evidence of such an agreement), it need not be signed by the party against whom enforcement is sought, provided it is accepted and acted upon. See Paterson Edey Lumber Co. v. Carolina-Portland Cement Co., 215 Ala. 621, 112 So. 245
(1927), wherein this Court, relying heavily on Hardwood Package Co. v. Courtney Co., 253 F. 929 (C.C.A. 4th Cir. 1918), noted the general rule that, in the absence of a statutory requirement, a signature on a writing is not required in order to form a contract, provided the writing is accepted and acted upon as the agreement of the parties. The court in Hardwood Package stated:
 "Apart from the statute of frauds, which is not set up in this case, it is well settled that if the minds of contracting parties meet at all points, and their agreement is fully set forth in an unsigned memorandum, which they both accept as correct, a binding obligation results, although it was their intention to have a formal contract prepared and signed."
253 F. at 930. See, also, 17A Am.Jur.2d Contracts, §§ 185, 186, 187 (1991). Conduct of one party from which the other may reasonably draw the inference of assent to an agreement is effective as acceptance. See Deeco, Inc. v. 3-M Co.,435 So.2d 1260 (Ala. 1983); SGB Construction Services, Inc. v. Ray Sumlin Construction Co., 644 So.2d 892 (Ala. 1994); Holland v. Continental Telephone Co. of the South, 492 So.2d 998 (Ala. 1986); Lilley v. Gonzales, 417 So.2d 161 (Ala. 1982). See, also, Anderson Brothers Chrysler Plymouth Dodge, Inc. v. Hadley, 720 So.2d 895 (Ala. 1998) (held that the failure of a party to sign a contract where indicated next to an arbitration provision did not render the arbitration provision unenforceable); and Quality Truck and Auto Sales, Inc. v. Yassine, [Ms. 1971088, March 26, 1999]730 So.2d 1164 (Ala. 1999).[4]
The record indicates that the Rushes are joint owners of the house serviced by Terminix Service; that Terminix Service mailed the "Termite Protection Plan" to the Rushes; that the Rushes received that contract; that the contract specifically designated Steve Rush as a "Purchaser"; that the Rushes paid an annual fee to Terminix Service for 9 or 10 years; that both Steve Rush and Kim Rush signed as a "Customer" on "Terminix Reinspection Report[s]"; that the Rushes made a claim under, and substantially benefited from, the contract; and that the Rushes actively supervised the repairs Terminix Service undertook to make. We conclude from these facts that, as a matter of law, the Rushes agreed to the terms of the "Termite Protection Plan," including the arbitration provision contained therein.
The Rushes have not made the requisite showing of a clear legal right to have the trial court set aside its order compelling arbitration. Capital Investment Group, Inc. v. Woodson,694 So.2d 1268 (Ala. 1997). Therefore, *Page 1179 
their request for mandamus relief is denied.
WRIT DENIED.
Hooper, C.J., and Maddox, See, Lyons, and Brown, JJ., concur.
Johnstone, J., concurs in the result.
Cook, J., concurs in part and dissents in part.
Kennedy, J., dissents.
[1] A service order and a copy of the contract were originally issued by Terminix Service to the Rushes' contractor; however, Terminix Service later mailed another contract to the Rushes after the house had been serviced and payment for that service had been made.
[2] Worthington and Hobaugh, as employees of a signatory to the contract, have standing to enforce the arbitration provision. See Ex parte Gray, 686 So.2d 250 (Ala. 1996); Georgia Power Co. v. Partin, [Ms. 1961192, September 4, 1998] 727 So.2d 2 (Ala. 1998).
[3] There is no dispute that the contract at issue involves interstate commerce within the meaning of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. See Allied-Bruce Terminix Cos. v. Dobson, supra.
We further note that we have considered the other arguments made by the Rushes in opposition to the trial court's order (i.e., the arguments pertaining to unconscionability, lack of mutuality of remedy, and the scope of the arbitration provision). However, those arguments are not persuasive. The arbitration provision covers "any controversy or claim between [the parties] arising out of or relating to the interpretation, performance or breach of any provision of [the] contract which relates to new termite damage." The Rushes' claims are based on an alleged breach of duties that arose out of Terminix Service's performance under the contract; those claims are, therefore, within the scope of the arbitration provision. With respect to the plaintiffs' unconscionability/lack-of-mutuality-of-remedy arguments, see Ex parte McNaughton, [Ms. 1961708, August 28, 1998] 728 So.2d 592 (Ala. 1998), and Med Center Cars, Inc. v. Smith, [Ms. 1960214, September 4, 1998]727 So.2d 9 (Ala. 1998).
[4] We note the following statement in Ex parte Jones,686 So.2d 1166, 1168 (Ala. 1996):
 "This Court has clearly held that one must be a signatory to a contract in order to be bound by the contract: `[A] party cannot be required to submit to arbitration any dispute he has not agreed to submit.' Old Republic Ins. Co. v. Lanier, 644 So.2d 1258, 1260
(Ala. 1994)."
The first part of this statement is overly broad and must be read in the context of the facts presented in Jones, which, the Court held, indicated that First Colonial Insurance Company, a defendant seeking to enforce an arbitration provision, was not a party to the contract that contained the arbitration provision. This statement should be read as being consistent with the well-settled rule that, under certain, but not all, circumstances, the absence of a signature from a written contract indicates a lack of mutual assent.