806 So.2d 343 (2001)
Jimmy D. AUVIL
v.
Amy M. JOHNSON.
1980145.
Supreme Court of Alabama.
June 8, 2001.
Dennis R. Bailey, T. Kent Garrett, and William H. Webster of Rushton, Stakely, *344 Johnston & Garrett, P.A., Montgomery, for appellant.
Jere L. Beasley, W. Daniel "Dee" Miles III, and Scott T. McArdle of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for appellee.
JOHNSTONE, Justice.
Jimmy D. Auvila defendant in a case pending in the Montgomery County Circuit Courtappeals from the trial court's order denying his motion to compel arbitration of the plaintiff Amy M. Johnson's claims. We affirm.
Pursuant to an application dated May 26, 1997, plaintiff Amy M. Johnson and her husband, Duane Johnson, purchased a "variable universal life insurance policy" from American National Insurance Company (ANIC) through its agent, Auvil. The application, completed and signed by Duane and Amy, listed Duane as the proposed insured and Amy as the additional proposed insured.
Several weeks before Duane and Amy completed and signed the application, Duane alone had completed and signed a document dated April 30, 1997 and entitled "Purchaser Suitability Form/New Account Information & Arbitration Agreement," which, at the end of the second page, contains this language:
"PURCHASER AGREEMENT TO ARBITRATION
"THIS SECTION IS NOT APPLICABLE TO MISSOURI RESIDENTS!
"The following conditions are agreed to by all parties to this agreement.
"Arbitration is final and binding on the parties.
"The parties are waiving their right to seek remedies in court, including the right to jury trial.
"Pre-arbitration discovery is generally more limited and different from court proceedings.
"The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by arbitrators is strictly limited.
"The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
"By signature below, I(we) understand that I(we) have the right to any dispute between us arising under the federal securities laws to be resolved through litigation in the courts. In lieu of using the courts, I(we) may agree, after any such dispute has arisen, to settle it by arbitration before an appropriate group of arbitrators. However, I(we) understand that any other dispute between us arising out of any transaction or this agreement shall be settled by arbitration before the National Association of Securities Dealers, Inc., which must be commenced by a written notice of intent to arbitrate. Judgment upon any award rendered may be entered in any appropriate court.
"I (we) further understand that we may not bring a punitive [sic] or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against anyone who has initiated in court a punitive [sic] class action; or who is a member of a punitive [sic] class action until (1) the class action certification is denied; or (2) the class is decertified; or (3) I(we) are excluded from the class action by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein."
*345 Auvil himself did not sign the arbitration agreement; and none of the text of the agreement or the document containing it constitutes Auvil either a party to, or a beneficiary or a third-party beneficiary of, the agreement.
The "Purchaser Suitability Form/New Account Information & Arbitration Agreement," which contains the arbitration agreement, contains only two possible references to the insurance later to be purchased by Duane and Amy. They appear on the first page, over Auvil's signature but not over Duane's or Amy's. The first reference reads:
"This form must accompany all applications to establish new accounts in American National's Variable products, American National Investment Accounts, Inc., Variable Products Fund and Variable Insurance Products Fund II."
The second reference is a checked blank indicating the notation: "Application Attached." A similarly checked blank indicates adoption of the statement, "Signed Arbitration Agreement," an apparent reference to the arbitration agreement at the end of the same document. The form contains entries of information about Duane's investment resources and goals. The record does not contain any affidavit or other proof that the form containing the arbitration agreement did, in fact, "accompany" the application or that the application was, in fact, "attached" to the form.
Likewise, in the application Duane and Amy signed to obtain the insurance policy, the only reference to other documents, such as the one containing the arbitration agreement previously signed by Duane, reads: "Both of the undersigned declare for themselves, and all interested parties, that all of the answers in the three pages of this application and any attachments to it are full, complete and true to the best of their knowledge and belief." The insurance policy itself does not contain any arbitration provisions.
Duane sued ANIC and Auvil, and asserted, among other theories, claims of fraudulent misrepresentation and fraudulent suppression. Duane then voluntarily dismissed his lawsuit, and Amy alone sued ANIC and Auvil for fraudulent misrepresentation; fraudulent suppression; negligent hiring, training, and supervision; and wanton hiring, training, and supervision. She claimed that Auvil and ANIC "misrepresented and suppressed the true nature, terms, and performance of the variable universal life insurance policy."
Auvil moved to compel arbitration and to dismiss or, in the alternative, to stay proceedings. ANIC joined in Auvil's motion to compel arbitration. On four theories Amy timely responded to the motion. First, because she was a nonsignatory to the arbitration agreement, she could not be compelled to arbitrate her claims. Second, because the business of insurance is not subject to arbitration under the guidelines of the National Association of Securities Dealers, Inc. (NASD), it could not serve as arbitrator as required by the arbitration agreement. Third, the McCarran-Ferguson Act, 15 U.S.C. § 1011-12, saves §§ 27-14-22 and 8-1-41(3), Ala.Code 1975, from preemption by the Federal Arbitration Act; and these state Code sections prohibit specific enforcement of arbitration clauses in contracts of insurance. And, fourth, specific enforcement of the arbitration agreement would deny Amy's right to a jury trial as guaranteed by the Alabama Constitution of 1901 and the United States Constitution. Following oral arguments of counsel, the trial court denied Auvil and ANIC's motion to compel arbitration on the following grounds: (1) Amy did not sign the arbitration agreement; (2) Ex parte Hagan, 721 So.2d 167 (Ala.1998), *346 holds the business of insurance not subject to arbitration under the arbitration guidelines of NASD; (3) the McCarran-Ferguson Act saves §§ 27-14-22 and 8-1-41(3), which prohibit specific enforcement of arbitration clauses in contracts of insurance; and (4) specific enforcement of the arbitration agreement would deny Amy's right to trial by jury guaranteed by Art. I, §§ 10, 11, and 13, Alabama Constitution of 1901, and by the Seventh Amendment to the United States Constitution.
Only Auvil appeals. ANIC has not appealed from the denial of the motion to compel arbitration.
On appeal, Auvil contends that: (1) the trial court erred in determining that Amy's "failure to sign the arbitration agreement precludes [Auvil] from compelling arbitration of her claims," (2) the trial court erred in determining that Amy's claims involve the business of insurance, which cannot be arbitrated under NASD arbitration guidelines, and (3) the trial court erred in determining that the McCarran-Ferguson Act allows Alabama law to prohibit arbitration of Amy's claims.
As we will explain, we conclude that the denial of Auvil's motion to compel arbitration was valid for the first reason cited by the trial court: that Amy's not signing the arbitration agreement precludes Auvil from compelling her to arbitrate her claims. As we will further explain, we further conclude that the denial of Auvil's motion to compel arbitration was valid for a reason not cited by the trial court but fully supported by the materials considered by the trial court: that Auvil, as a nonsignatory to the arbitration agreement, was without standing to enforce it under the circumstances of this case. Our conclusions to this effect pretermit any discussion of Auvil's challenges to the other reasons cited by the trial court for its denial of Auvil's motion to compel arbitration.

I. Amy Was Not Bound By The Arbitration Agreement
"`[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers of America v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). On the one hand, Amy's alleged damages, though sought on tort theories, depend on her status either as a party to the insurance contract or as a beneficiary or third-party beneficiary of it. On the other hand, neither the insurance policy nor the application Amy signed with Duane to obtain the policy contains any arbitration provision, and Amy did not sign the "Purchaser Suitability Form/New Account Information & Arbitration Agreement" which does contain the arbitration provisions.
We hold that the application did not incorporate by reference the form containing the arbitration agreement previously signed by Duane and that the arbitration agreement does not bind Amy, who did not sign the document containing it and who does not base her claims or her damages on that document. Therefore, the trial court correctly denied Auvil's motion to compel Amy to arbitrate her claims.

II. Auvil Was Without Standing To Enforce The Arbitration Agreement
This Court has addressed on a case-by-case basis the issue of whether a nonsignatory agent of a signatory to an arbitration agreement can compel arbitration. Thus, a discussion of the evolution of the cases is appropriate.
In Ex parte Gray, 686 So.2d 250 (Ala. 1996), the trial court had compelled plaintiff *347 Duane Gray to arbitrate his claim of a false misrepresentation against Shannon Pardue, a nonsignatory agent of Crown Pontiac, Inc. Relying on Ex parte Gates, 675 So.2d 371 (Ala.1996), and Paine, Webber, Jackson & Curtis, Inc. v. McNeal, 143 Ga.App. 579, 239 S.E.2d 401 (1977), this Court found the arbitration agreement broad enough to encompass Gray's claims against Pardue in this scenario:
"As the trial court noted in its order compelling arbitration, the thrust of Gray's complaint against Crown and Pardue is that Pardue, as Crown's agent, while acting within the line and scope of his agency, falsely represented the condition of the vehicle Gray was buying."
686 So.2d at 251.
In Ex parte Gates, the trial court had compelled Reneau Gates and his daughter Betty Gates to arbitrate their fraud claims against Bilo Homes, Inc., its manager Charles Costner, and Palm Harbor Homes, Inc. Finding the arbitration agreement so broad as to cover "`[a]ll disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire contract,'" this Court denied the Gateses' petition for a writ of mandamus directing the trial court to vacate its order. 675 So.2d at 374. In Ex parte Gates, this Court did not specifically discuss the right of a nonsignatory agent to compel arbitration.
In McNeal, the Georgia Court of Appeals wrote:
"McNeal argues that Skone, not being a signatory to the contract, is not entitled to rely on its provisions. He has provided us with an unreported decision from the U.S. District Court of the Northern District of Georgia holding that an agent in Skone's position, not a party to the contract containing the arbitration clause, cannot claim the benefit of such a clause. Isbell v. Paine, Webber, Jackson & Curtis, Inc. and Peter C. Buchly, No. C75-2140A (N.D. Ga., April 14, 1976). However, as McNeal points out forcefully and repeatedly in his briefs, this court is not bound by the decisions of federal courts other than the U.S. Supreme Court. Reviewing the authorities and arguments set out by both sides, we find those in favor of an expansive construction of the agreement to include the employee more persuasive. In Starr v. O'Rourke, [5 Misc.2d 646, 159 N.Y.S.2d 60,] the court held that insofar as the complaint was based on contract, there was no claim against the employee because he was an agent; insofar as it sounded in tort, the defendants were joint tortfeasors and any action in regard to one inures to the benefit of the other. `Separate forums may result in varying decisions discreditable to the administration of justice.' Id. 159 N.Y.S.2d at 62. In a footnote, the First Circuit Court of Appeals, in Hilti, Inc. v. Oldach, 392 F.2d 368, 369, n. 2 [ (1st Cir.1968) ], stated that, `If arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised.' We are persuaded that the ends of justice are more nearly met by holding that Skone must be allowed to participate in the arbitration, should the trial court, on remand, grant the motion as to Paine, Webber."
143 Ga.App. at 581-82, 239 S.E.2d at 404 (emphasis added). Thus the Georgia Court of Appeals held only that the nonsignatory agent, as a joint tortfeasor with his signatory principal, could benefit from the arbitration agreement if, but only if, *348 the signatory principal succeeded in compelling arbitration. Thus, implicit in this Court's decision in Ex parte Gray, supra, are the limitations that the nonsignatory agent's right to compel arbitration is dependent upon his or her status as a joint tortfeasor with a signatory and upon the success of the signatory in compelling arbitration of the claims against it.
In 1997, in Ex parte Stripling, 694 So.2d 1281 (Ala.1997), the trial court had compelled plaintiffs G. Michael Stripling and his sister Patricia S. Tobin to arbitrate their tort claims against SouthTrust Bank, N.A., SouthTrust Securities, Inc., and Timothy W. Bembry, an employee of South-Trust Securities. The plaintiffs contended that SouthTrust Bank and Bembry, as nonsignatories to the arbitration agreement, lacked standing to invoke the agreement. The agreement provided:
"`All controversies which may arise between the undersigned [Stripling and Tobin] and you [SouthTrust Securities] as introducing or clearing broker, your agents or employees, concerning any transaction or the construction, performance or breach of this or any other agreement between us ... shall be determined by arbitration....'"
694 So.2d at 1283 (emphasis added in Ex parte Stripling). Because the plaintiffs had sued Bembry as an agent or an employee of SouthTrust Securities and the language of the agreement specifically included the "agents or employees" of SouthTrust Securities, we compelled arbitration of the claims against Bembry. While the Stripling Court cites Ex parte Gray, supra, the Stripling rationale is based entirely upon the express language in the arbitration agreement including "agents or employees" as beneficiaries.
In Ex parte Isbell, 708 So.2d 571 (Ala. 1997), the trial court had compelled arbitration of plaintiffs Roy Isbell and Carroll Isbell's tort claims against a mobile home manufacturer, the seller, and the seller's agent. The Isbells petitioned for a writ of mandamus. They argued, among other contentions, that the mobile home manufacturer and the seller's agent could not compel arbitration because they were not signatories to the contract containing an arbitration agreement between the seller and the Isbells. This Court held that Ex parte Gray, supra, controlled the case and therefore that the seller's agent could compel arbitration. This Court incidentally stated that, because the seller's agent signed the contract on behalf of the seller, "[i]n that sense, he is a signatory." 708 So.2d at 574. Because this statement by the court was not necessary to the decision, as we resolved the issue by following Ex parte Gray, supra, the statement is mere dictum. Adair v. Adair, 258 Ala. 293, 62 So.2d 437 (1952), and Roquemore v. Sovereign Camp, W.O.W., 226 Ala. 279, 146 So. 619 (1933).
In 1998, in Ex parte Napier, 723 So.2d 49 (Ala.1998), the trial court had allowed a nonsignatory agent, his nonsignatory employer, and signatories to a contract containing an arbitration clause to compel the plaintiffs to arbitrate their claims against them. The plaintiffs petitioned this Court for a writ of mandamus directing the trial court to vacate its order compelling arbitration. Relying on Ex parte Gates, supra, and not on Ex parte Gray, we found the express language of the arbitration clause broad enough to encompass the plaintiffs' claims against the nonsignatory agent and his nonsignatory employer. We found also that the plaintiffs' claims against the nonsignatory defendants were so intertwined with the claims of the signatory defendants that the claims against the nonsignatories should be arbitrated together with the claims against the signatories.
*349 In Georgia Power Co. v. Partin, 727 So.2d 2 (Ala.1998), the trial court had denied the motion of defendant Georgia Power and its nonsignatory agent Ledbetter to compel arbitration of the Partins' claims against them. Georgia Power and Ledbetter appealed. Mr. Partin (and his wife seeking damages for loss of consortium) had sued Ledbetter and Georgia Power, as agent and principal, respectively, for negligently or wantonly injuring Mr. Partin on a job site. Mr. Partin sued as a third-party beneficiary of a contract between his employer and Georgia Power. The contract, which governed the rights and duties of the parties at the work site, contained an arbitration agreement. Citing Ex parte Gray, supra, this Court reversed and remanded with instructions to compel arbitration of the Partins' claims against not only the signatory Georgia Power, but also its nonsignatory agent Ledbetter. The Court reasoned:
"Because [Partin] is essentially suing Georgia Power through his claims against Ledbetter, we agree that Ledbetter is entitled to the benefit of the contract signed by Georgia Power and may enforce its arbitration provision."
Georgia Power, 727 So.2d at 6. Noteworthily, in this case, as in Gray, supra, and McNeal, supra, signatory and nonsignatory joint tortfeasors, as principal and agent, respectively, concurrently succeeded in compelling arbitration.
In Ex parte Rush, 730 So.2d 1175 (Ala. 1999), the trial court had granted the motion of the defendants, Allied-Bruce Terminix Companies, Inc.; Terminix International, Inc.; employee Hal Worthington; and employee Mike Hobaugh to compel the Rushes to arbitrate their fraud and wantonness claims. The Rushes petitioned this Court for a writ of mandamus directing the trial court vacate its order compelling arbitration. Citing Ex parte Gray, supra, and Georgia Power, supra, this Court in a footnote stated, "Worthington and Hobaugh, as employees of a signatory to the contract, have standing to enforce the arbitration provision." Ex parte Rush, 730 So.2d at 1177 n. 2.
In McDougle v. Silvernell, 738 So.2d 806 (Ala.1999), the trial court had denied the motion of the defendants, McDougle and his law firm, to compel arbitration. McDougle and his firm appealed. This Court found McDougle to be the agent of First American Title Insurance Company, which had issued to the plaintiffs Silvernells a "Commitment For Title Insurance," which contained an arbitration provision. 738 So.2d at 807. In the course of this agency, McDougle had handled the closing of the Silvernells' purchase of land in Barbour County. Relying solely on Gray, supra, and Georgia Power, supra, this Court held that McDougle, as an agent of First American, had standing to enforce the arbitration provision in the "Commitment For Title Insurance."
In Ex parte Foster, 758 So.2d 516 (Ala. 1999), the trial court had granted the motion of the defendants, David Belew, William Belew Insurance Agency, and Southern United Fire Insurance Company, to compel plaintiff Dorothy Foster to arbitrate her claims of fraud, breach of contract, and bad-faith failure to pay an insurance claim. Foster petitioned this Court for a writ of mandamus directing the trial court to vacate its order compelling arbitration. This Court in a footnote stated, "David Belew and William Belew Insurance Agency have standing to enforce the arbitration provision relied on by Southern United." 758 So.2d at 518 n. 2. While the express language in the arbitration provision, which included "agents (or persons or entities alleged to be its agents), employee, representatives, and/or officers," granted agents David Belew and William Belew *350 Insurance the right to compel arbitration of Foster's claims, the Foster Court cited Ex parte Gray, supra, which did not involve agent-inclusive language in the arbitration agreement, as the authority for the Foster agents' standing to compel arbitration.
As demonstrated, four of these eight post-Gray cases according a nonsignatory agent the right to compel arbitration either rely or may rely on express inclusive language in the arbitration agreements; the other four rely entirely on the rule in Ex parte Gray, which relies on McNeal, supra, the 1977 Georgia Court of Appeals decision, which premised its rationale on the nonsignatory agent's status as a joint tortfeasor with a signatory and on the signatory's success in compelling arbitration. The rationale of McNeal, supra, and Ex parte Gray, supra, and their progenyEx parte Isbell, Georgia Power, McDougle, and Ex parte Rush is essentially a part of the doctrine of equitable estoppel intertwining, which has been developed and refined by Ex parte Isbell, supra; Ex parte Dyess, 709 So.2d 447 (Ala.1997); Ex parte Napier, supra; First Family Financial Services, Inc. v. Rogers, 736 So.2d 553 (Ala.1999); and Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540 (Ala.2000). Thus the holding in Ex parte Gray is subject to the restrictions imposed by the intertwining cases.
In First Family Financial Services, this Court held that the doctrine of equitable estoppel intertwining "is not applicable in cases such as this one, where the arbitration [agreement] is specifically limited to the ... parties (i.e., where the provision is not broad enough to indicate an intent on the plaintiff['s] part to arbitrate with a nonsignatory)." 736 So.2d at 560. In Kennedy, supra, this Court held:
"The concept of `intertwining' necessarily presupposes that the signatory to the arbitration agreement is or will be engaged in an arbitration proceeding with the plaintiff. In this case, Jack Lee did not appeal the trial court's denial of its motion to compel arbitration. Therefore, there is no pending or contemplated arbitration proceeding in which the doctrine of equitable estoppel could allow Southern Energy to compel the Kennedys to arbitrate their claims against it. In other words, `intertwining' requires at least two threads to weave togetherone cannot intertwine a single thread."

774 So.2d at 545 (emphasis added).
Thus, we first observe that the language of the arbitration agreement does not include Auvil as a beneficiary. The terms of the arbitration agreement benefit and bind only the parties. Auvil is just an agent, not a party. Therefore, under our holding in First Family Financial Services, Inc., supra, Auvil cannot compel Amy to arbitrate her claims against him.
Next, we apply the quoted holding of Kennedy, supra. ANIC did not appeal the trial court's denial of its motion to compel arbitration. The doctrine of intertwining extends the benefits of an arbitration agreement to a nonsignatory only if the claims against him are intertwined with the claims against a signatory who is going to arbitration. Because the signatory ANIC is not going to arbitration, the claims against it do not provide a basis for intertwining. Kennedy, supra. As stated by the Georgia Court of Appeals in McNeal, supra, "`Separate forums may result in varying decisions discreditable to the administration of justice.'" 143 Ga. App. at 582, 239 S.E.2d at 404 (quoting Starr v. O'Rourke, 5 Misc.2d 646, 159 N.Y.S.2d 60, 62 (N.Y.Sup.Ct.1957)). Therefore, Auvil was without standing to enforce the arbitration agreement.

*351 III. Conclusion

The judgment of the trial court is due to be affirmed if it is right for any reason. Premiere Chevrolet, Inc. v. Headrick, 748 So.2d 891 (Ala.1999); McKenzie Methane Corp. v. M-W Drilling, Inc., 653 So.2d 982 (Ala.1995); Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala.1988). Because we have determined, as explained, that Amy is not bound by the arbitration agreement and that Auvil is not included as a party, a beneficiary, or an intertwined beneficiary of the arbitration agreement, the judgment of the trial court is due to be affirmed.
AFFIRMED.
MOORE, C.J., and HOUSTON, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE, J., concurs in part and concurs in the result in part.
LYONS, J., recuses himself.
SEE, Justice (concurring in part and concurring in the result in part).
I concur in Part I of the majority opinion; I agree that Auvil is not entitled to compel arbitration because Amy did not agree to submit her claims to arbitration. I concur only in the result, however, of Part II of the majority opinion, because I disagree with the reasoning of the majority opinion on the issue discussed in Part II.
In Part II of its opinion, the majority holds that Auvil does not have standing to enforce the arbitration agreement, to which he was not a signatory, because he is neither a party to, nor a beneficiary of, the contract containing the arbitration agreement. I would not reach that issue, because I believe that the issue the majority addresses in Part I of its opinion is dispositive of the case. I agree with the majority's conclusion in Part I that Auvil is not entitled to enforce the agreement against Amy because Amy is not a signatory to the arbitration agreement and because that agreement was not incorporated into the application for insurance that she did sign.
Auvil argues that the arbitration agreement was a supplement to the insurance application, which both Amy and Duane signed, and that, because she signed the application, Amy was bound by the terms of the arbitration agreement. I disagree. By signing the application, Amy was only declaring that the answers on the application and on all supplements submitted with the application were "full, complete and true, to the best of [her] knowledge and belief." She did not agree to the incorporation of the arbitration agreement into the application.
In his brief, Auvil points out that this Court has repeatedly recognized the broad federal policy in favor of arbitration. See, e.g, Homes of Legend, Inc. v. McCollough, 776 So.2d 741 (Ala.2000). As the United States Supreme Court has held, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (footnote omitted). However, the Supreme Court has made it equally clear that a party may not be compelled to arbitrate a dispute that he or she did not agree would be the subject of arbitration. See AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); see also Ex parte Stallings & Sons, Inc., 670 So.2d 861, 862 (Ala.1995).
*352 The insurance application that Amy signed does not purport to incorporate the terms of the arbitration agreement. The language that Auvil relies on as evidence indicating that that agreement was incorporated into the applicationthe statement that by signing the application the signatories were affirming that all information included in the application and in any supplements to the application was trueis insufficient, in the absence of any additional evidence, to support a conclusion that Amy's signature on the application bound her to the terms of the arbitration agreement.
For the foregoing reasons, I concur in Part I of the majority's opinion and I concur in the result as to Part II.