895 So.2d 882 (2004)
Curtis BROWN and Brown Solutions, Inc.
v.
Sheila DENSON.
1020430.
Supreme Court of Alabama.
June 25, 2004.
Rehearing Denied August 20, 2004.
*883 Daniel S. Wolter and Andrew J. Moak of Gaines, Wolter & Kinney, P.C., Birmingham, for appellants.
Myron K. Allenstein and Rose Marie Allenstein of Allenstein & Allenstein, LLC, Gadsden, for appellee.
PER CURIAM.
Curtis Brown and Brown Solutions, Inc., the defendants in an action pending in the Etowah Circuit Court, appeal from the trial court's denial of their motion to compel arbitration of the claims against them in an action filed by Sheila Denson. We affirm.

I. Factual Background and Procedural History

On February 17, 2000, Denson completed an enrollment form for a group disability-insurance policy issued by Unum Life Insurance Company of America. The policy was offered to Denson as an employee of the St. Clair Board of Education. Curtis Brown sold Denson the disability policy. He signed Denson's enrollment form *884 next to the words "Signature of Agent." However, according to a document entitled "Broker Licensing and Selling Agreement" between Brown and Mass Group Marketing, Inc. ("MGM"), Brown was an independent broker and sold the products of various insurance carriers. Brown specifically acknowledged in that agreement that he had "no contractual relationship with the Carriers [to be specified by MGM] and that [he was] not, and that [he would] refrain from holding [himself] out as an Employee, Representative, Partner, Joint Venture or Associate of the Carriers."
Denson's disability coverage, for which she paid monthly premiums of $59.84, became effective on March 1, 2000. In her complaint, Denson says that she did not receive a copy of the insurance policy when she purchased the insurance. Instead, she says, she received a document entitled "Education Salary Protection Plan § 39592-AL2-4C."
Denson alleged in her complaint that before she purchased the Unum disability policy, she told Brown that she suffered from "lupus," a disease "which causes multiple problems," and that she "was under a doctor's care." She alleged that Brown told her that "it didn't matter if [she] had any health problems, because within a year the policy would pay." Denson also alleged as follows:
"During the summer of 2000, [Denson] became ill and spoke to Curtis Brown. [Denson] expressed concern that because she was sick, perhaps she should drop the policy. Curtis Brown represented to [Denson] that she should not drop the policy and that even though a pre-existing condition existed, that should not be a problem on payment of benefits."
On October 27, 2000, Denson was admitted to the hospital, and she was unable to work for a short time. She briefly returned to work in November, but thereafter was unable to return to work. In January 2001, Denson filed a claim with Unum under the disability-insurance policy for long-term disability benefits. Unum denied Denson's claim on the basis that her disability was caused by, was contributed to by, or resulted from a preexisting condition. Denson asked Unum to review its denial of her claim, but Unum did not reverse its decision to deny benefits on the basis of a preexisting condition. Unum also notified Denson that in order to further contest its decision on her claim, she must request arbitration within two years from the date it denied her claim.
On March 12, 2002, Denson sued Curtis Brown and Brown Solutions, Inc., a corporation of which Brown and his wife Janet are the officers, alleging that Brown's representations to her that Unum would pay her disability benefits regardless of her preexisting medical condition were false. Brown and Brown Solutions moved to compel arbitration pursuant to an arbitration clause contained in Denson's disability-insurance policy with Unum.[1] According to that motion, Denson *885 has already engaged in arbitration with Unum as to her claim against it. In support of their motion, Brown and Brown Solutions submitted as exhibits copies of Denson's disability-insurance enrollment form and disability-claim form, a copy of an exemplar summary-of-benefits document issued by Unum, copies of correspondence between Unum and Denson concerning her disability claim, and a copy of Brown's independent-broker agreement with MGM.
In opposition, Denson argued that she did not sign an arbitration agreement with Brown or Brown Solutions and, therefore, that there is no contract between her and Brown or Brown Solutions that requires her to submit her claims against them to arbitration; that Unum is not a party to this action and that she does not seek benefits pursuant to the Unum disability-insurance policy, but instead seeks only damages from Brown and Brown Solutions for fraud; that Brown's misrepresentations did not substantially affect interstate commerce under the test adopted in Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000); and that the Federal Arbitration Act ("the FAA") is unconstitutional because it was never intended to apply to state causes of action or to a claim such as this. The trial court denied Brown and Brown Solutions' motion to compel arbitration. Brown and Brown Solutions appeal.

II. Standard of Review

This Court's standard of review of an order granting or denying a motion to compel arbitration is well-settled.
"`We review de novo a trial court's ruling on a motion to compel arbitration. Green Tree Fin. Corp. v. Vintson, 753 So.2d 497, 502 (Ala.1999). Initially, the party seeking to compel arbitration must prove 1) the existence of a contract calling for arbitration, and 2) that the contract "is `a contract evidencing a transaction involving commerce' within the meaning of the Federal Arbitration Act (FAA)." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 53, 123 S.Ct. 2037, 2038, 156 L.Ed.2d 46 (2003) (quoting 9 U.S.C. § 2). "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995).'
"Hudson v. Outlet Rental Car Sales, Inc., 876 So.2d 455, 457 (Ala.2003) (emphasis omitted)."
Owens v. Coosa Valley Health Care, Inc., 890 So.2d 983, 986 (Ala.2004).

III. Analysis

Initially, Brown and Brown Solutions had the burden of proving that a contract calling for arbitration exists and that that contract evidences a transaction involving commerce within the meaning of the FAA. The arbitration provisions under which Brown and Brown Solutions seek to arbitrate are contained in the exemplar summary of benefits, the only copy in the record of any document allegedly provided *886 by Unum to Denson or her employer. Although a contract calling for arbitration exists, that contract is between Denson and Unum, not between Denson and Brown or Brown Solutions.
Brown and Brown Solutions first argue that they are entitled to compel Denson to arbitrate her claims against them because Brown is, they say, a "signatory agent" for Unum. Therefore, Brown and Brown Solutions argue, Denson cannot avoid arbitration by suing Brown, as an employee of a principal, citing Ex parte Gray, 686 So.2d 250 (Ala.1996). We cannot agree with the characterization of Brown as Unum's agent because, according to his broker-licensing agreement with MGM, Brown specifically acknowledged that he had no contractual relationship with any of the insurance carriers for which he solicited applications from prospective insureds and that he was not an employee of any of those carriers. Under these circumstances, Brown and Brown Solutions cannot contend, contrary to Brown's agreement with MGM, that they have a principal/agent relationship with Unum.
Brown and Brown Solutions also argue that this Court should find that Brown is an agent for Unum because Denson has not argued that he is not an agent or that he does not have the power to bind Unum to insurance contracts. But by the same token Denson does not contend as an element of this action that Brown was in fact acting as agent on behalf of Unum. Denson's failure to deny that Brown is an agent cannot rewrite the clear language of the contract between Brown and MGM and thereby create an agency relationship between Brown and Unum.
Brown and Brown Solutions also argue that they are entitled to compel Denson to arbitrate her claims against them even if Brown was not a signatory to the contract between Unum and Denson. They then discuss cases from this Court relative to the issue whether the nonsignatory agent of a signatory principal can compel arbitration. Those cases do not apply here, however, because under Brown's broker-licensing agreement with MGM he is not Unum's agent. The only theory upon which Brown and Brown Solutions might prevail is a theory of estoppel if their claims are intertwined with those of Unum. They do not, however, make that argument in their brief in this Court.[2]
We emphasize that under the peculiar factual circumstances of this case, Denson does not rely upon the terms of the disability-insurance policy containing the provision for arbitration in making her claims against Brown and Brown Solutions. This is not an action on the insurance policy. Instead, Denson has sued Brown and Brown Solutions because, she alleges, Brown misrepresented to her that if she purchased the disability-insurance policy Unum would pay her disability benefits regardless of her preexisting medical condition. Of course, the existence of the policy is relevant as background, but that circumstance alone cannot justify the conclusion *887 that Denson relies upon the terms of the policy. It is because the policy avails Denson nothing that she has sued Brown and Brown Solutions.

IV. Conclusion

We affirm the trial court's order denying Brown and Brown Solutions' motion to compel arbitration. We therefore pretermit consideration of any of Denson's other arguments.[3]
AFFIRMED.
HOUSTON, LYONS, HARWOOD, and WOODALL, JJ., concur.
JOHNSTONE, J., concurs specially.
SEE, BROWN, and STUART, JJ., dissent.
JOHNSTONE, Justice (concurring specially).
I concur fully in the main opinion. I add that Ex parte Gray, 686 So.2d 250 (Ala.1996), cited by the Brown defendants in the case now before us, has been limited by Auvil v. Johnson, 806 So.2d 343 (Ala.2001), so that Gray would not support the Brown defendants' argument even if their premise were true that Brown himself was an agent of Unum.
SEE, Justice (dissenting).
I respectfully dissent. I do not believe that Sheila Denson may avoid performance under the arbitration provision in her disability-insurance policy by suing the insurance producer[4] who sold her the disability insurance instead of suing the insurance company that denied her disability-benefits claim.
Denson sued Curtis Brown and Brown Solutions, Inc., a company owned by Brown and his wife (hereinafter referred to collectively as "Brown"), alleging that Curtis Brown misrepresented to her that a preexisting medical condition of Denson's, lupus, would not disqualify her from receiving benefits under the disability-insurance policy she was purchasing from Unum Life Insurance Company of America ("Unum"). Brown argues that the insurance contract Denson signed contains a valid arbitration clause and that, as a licensed signatory agent for Unum, Brown is entitled to compel Denson to arbitrate her claims against Brown under that arbitration clause. The arbitration clause in Denson's disability-insurance policy states, in pertinent part: "All disputes, claims, and disagreements of any kind or nature that arise out of, or are related in any way to[,] the summary of benefits are subject to arbitration, unless a mutually agreed upon settlement can be reached."
Denson's fraudulent-misrepresentation claim against Brown rests on the fact that Unum applied the preexisting-condition provision in the disability-insurance policy to deny Denson benefits she believes Curtis Brown promised her Unum would pay. Therefore, because the claim is "related in any way to the summary of benefits," namely, the denial of those benefits, this dispute falls within the scope of the arbitration clause.
In Ex parte Gray, 686 So.2d 250, 251 (Ala.1996), this Court noted that "[a] party *888 should not be able to avoid an arbitration agreement merely by suing an employee of a principal." Gray sued Shannon Pardue, an automobile salesman for Crown Pontiac, Inc., alleging that Pardue had misrepresented the condition of the car Gray had purchased from Crown. The arbitration clause in Gray stated that "all disputes or controversies ... arising out of or in connection with the purchase of this vehicle ... will be resolved by arbitration." 686 So.2d at 251. This Court held in Gray that Gray was required to arbitrate her dispute with Pardue even though Pardue himself was not a signatory to the arbitration agreement because Gray's claim came within the language of the agreement. Id.
In this case, Curtis Brown sold Denson a disability-insurance policy while he was working as a producer for Unum. Just as the employee in Gray was acting as the agent of his employer-principal, Curtis Brown was acting as the agent of his principal, Unum. Brown submitted in support of the motion to compel arbitration a copy of Curtis Brown's producer's agreement with Mass Group Marketing, Inc. That agreement appoints Curtis Brown as a soliciting agent for Mass Group and for those insurance carriers specified by Mass Group, which included Unum. See Washington Nat'l Ins. Co. v. Strickland, 491 So.2d 872, 874 (Ala.1985) ("An insurance company ... has the right to employ agents with limited authority.... In the insurance context, the most prevalent type of special agent is the `soliciting agent.'"). As Curtis Brown's principal, Unum would be liable for any fraud Curtis Brown may have perpetrated while acting within the scope of his producer's agreement with Unum. See Strickland, 491 So.2d at 874-75 ("[W]hen a soliciting agent commits a fraud upon one who seeks insurance coverage, his insurer principal will be liable for that fraud, if the fraud was perpetrated by the agent within the scope of his employment. The liability of an insurer for the fraudulent acts of its soliciting agents is grounded in the doctrine of `respondeat superior'....").
Denson has alleged a fraudulent-misrepresentation claim against Brown grounded on Curtis Brown's assurances that the provisions of the disability-insurance policy regarding preexisting conditions would not bar her potential disability-benefits claim. Just as in Gray, the arbitration provision here states that it applies to "all disputes." Therefore, Denson must arbitrate her dispute with Brown.
Denson argues that Gray does not apply in this case because the plaintiff in Gray sued both the principal, who was a signatory to the arbitration agreement, and the agent, who was not. Denson argues that because she has not sued Unum, Brown, who is not a signatory to the contract containing the arbitration clause, cannot invoke the arbitration clause to compel her to arbitrate her claims against him.
The rationale that supports the application of the doctrine of equitable estoppel to require the arbitration of claims against a nonsignatory when those claims are intertwined with potential claims against a signatory applies in this case. In Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540 (Ala.2000), this Court discussed the circumstances in which equitable estoppel applies:
"`First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[] out of and relate[] directly to the [written] agreement" *889 and arbitration is appropriate.... Second, "application of equitable estoppel is warranted ... when the signatory [to the contract that contains the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings ... would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."'"[5]
774 So.2d at 545 (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir.1999)).
First, Denson's claims against Brown arise out of her insurance contract with Unum for disability benefits, namely, she claims that Unum's agent, Curtis Brown, promised her policy benefits that she did not receive. Denson "must rely on the terms of the written agreement in asserting [her] claims" against Brown. "When each of a signatory's [Denson's] claims against a nonsignatory [Brown] `makes reference to' or `presumes the existence of' the written agreement, the signatory's claims `arise[] out of and relate[] directly to the [written] agreement' and arbitration is appropriate...." 774 So.2d at 545.
Second, Denson cannot avoid arbitration by asserting claims against only Brown, Unum's agent, because doing so would "thwart" the policy behind arbitration. Dealing through agents is a common practice; indeed, corporations deal exclusively through their agents. See James D. Cox, Corporations § 8.1, at 127-28, §§ 8.5 to 8.10, at 133-38 (1997) (describing the duties of officers in managing a corporation's operations and stating that "officers of a corporation are in legal theory the agents of the corporation"). Unum may be bound in a subsequent arbitration proceeding by rulings in the judicial proceeding between Denson and Brown, thus depriving Unum of the benefit of its contract with Denson. See Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So.2d 507, 516 (Ala.2002) ("In Alabama, the '"doctrines of [res judicata and collateral estoppel] apply as well to awards in arbitration as they do to adjudications in judicial proceedings."'") (quoting Old Republic Ins. Co. v. Lanier, 790 So.2d 922, 928 (Ala.2000), quoting in turn American Ins. Co. v. Messinger, 43 N.Y.2d 184, 189-90, 371 N.E.2d 798, 801, 401 N.Y.S.2d 36, 39 (1977)). Allowing Denson to avoid the arbitration of her claims against Brown, the agent, allows Denson to circumvent her contractual obligation to arbitrate "[a]ll disputes, claims, and disagreements of any kind or nature that arise out of, or are related in any way to[,] the summary of benefits."
In Auvil v. Johnson, 806 So.2d 343 (Ala.2001), this Court addressed the issue whether an agent of an insurance company may invoke an arbitration provision in an agreement between the insurer and the insured. Johnson had purchased a life insurance policy from American National Life Insurance Company ("ANIC") through its agent, Auvil. Johnson had not signed the arbitration agreement, and, on that ground was held not to be bound by *890 the arbitration agreement:[6]
"As we will explain, we conclude that the denial of Auvil's motion to compel arbitration was valid for the first reason cited by the trial court: that Amy's [the wife's] not signing the arbitration agreement precludes Auvil from compelling her to arbitrate her claims. As we will further explain, we further conclude that the denial of Auvil's motion to compel arbitration was valid for a reason not cited by the trial court but fully supported by the materials considered by the trial court: that Auvil, as a nonsignatory to the arbitration agreement, was without standing to enforce it under the circumstances of this case."
806 So.2d at 346.
A majority of this Court went on to note that for an arbitration agreement to be binding on a nonsignatory, the agreement must be sufficiently inclusive to reach the non-signatory,[7] which, this Court concluded, the agreement in Auvil  restricted to "any dispute between us"  was not.[8] Denson, on the contrary, signed an agreement that expressly covers "[a]ll disputes, claims, and disagreements of any kind or nature that arise out of, or are related in any way to[,] the summary of benefits."[9] This language in the arbitration clause now before us distinguishes this case from Auvil.
This Court also noted in Auvil an alternative basis for a nonsignatory agent to compel arbitration:
"As demonstrated, four of these eight post-Gray cases according a nonsignatory agent the right to compel arbitration either rely or may rely on express inclusive language in the arbitration agreements; the other four rely entirely on the rule in Ex parte Gray, which relies on [Paine, Webber, Jackson & Curtis, Inc. v.] McNeal, [143 Ga.App. 579, 239 S.E.2d 401 (1977)], the 1977 Georgia Court of Appeals decision, which premised its rationale on the nonsignatory agent's status as a joint tortfeasor with a *891 signatory and on the signatory's success in compelling arbitration. The rationale of McNeal, supra, and Ex parte Gray, supra, and their progeny  Ex parte Isbell, [708 So.2d 571 (Ala.1997),] Georgia Power [Co. v. Partin, 727 So.2d 2 (Ala.1998),], McDougle [v. Silvernell, 738 So.2d 806 (Ala.1999),] and Ex parte Rush [,730 So.2d 1175 (Ala.1999),] is essentially a part of the doctrine of equitable estoppel intertwining, which has been developed and refined by Ex parte Isbell, supra; Ex parte Dyess, 709 So.2d 447 (Ala.1997); Ex parte Napier, [723 So.2d 49 (Ala.1998)]; First Family Financial Services, Inc. v. Rogers, 736 So.2d 553 (Ala.1999); and Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540 (Ala.2000). Thus the holding in Ex parte Gray is subject to the restrictions imposed by the intertwining cases.
"In First Family Financial Services, this Court held that the doctrine of equitable estoppel intertwining `is not applicable in cases such as this one, where the arbitration [agreement] is specifically limited to the ... parties (i.e., where the provision is not broad enough to indicate an intent on the plaintiff['s] part to arbitrate with a nonsignatory).' 736 So.2d at 560. In Kennedy, supra, this Court held:
"`The concept of "intertwining" necessarily presupposes that the signatory to the arbitration agreement is or will be engaged in an arbitration proceeding with the plaintiff. In this case, Jack Lee did not appeal the trial court's denial of its motion to compel arbitration. Therefore, there is no pending or contemplated arbitration proceeding in which the doctrine of equitable estoppel could allow Southern Energy to compel the Kennedys to arbitrate their claims against it. In other words, "intertwining" requires at least two threads to weave together  one cannot intertwine a single thread.'
"774 So.2d at 545 (emphasis added)."
Auvil, 806 So.2d at 350 (boldface type omitted).
In Auvil, as in Kennedy, only the agent, Auvil, had appealed the trial court's order denying arbitration. ANIC, the principal, by failing to appeal, had consented to the trial of the dispute. This Court has held that a nonsignatory may not compel arbitration of a dispute against him when the signatory's motion to compel arbitration was denied by the trial court and the signatory did not appeal that denial. See Carriage Homes v. Channell, 777 So.2d 83, 86 (Ala.2000) (holding that the manufacturer of the mobile home, who was a nonsignatory to the arbitration agreement between the buyer and seller, could not compel arbitration when the buyer's claims against the seller were not going to be arbitrated). The case before us differs from Auvil in that there remains in the case before us the prospect that the principal, Unum, may be called to answer for the acts of its agent, Curtis Brown. "[W]hen a soliciting agent commits a fraud upon one who seeks insurance coverage, his insurer principal will be liable for that fraud, if the fraud was perpetrated by the agent within the scope of his employment." Strickland, 491 So.2d at 874.
"`[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 *892 L.Ed.2d 765 (1983)). Therefore, because I believe that the trial court improperly denied Brown's motion to compel Denson to arbitrate her claims, I respectfully dissent
NOTES
[1] According to a document in the record that appears to be an exemplar summary of benefits, the applicable arbitration clause states, in pertinent part:

"What is arbitration?
"Arbitration is a means of resolving disputes out of court. It is generally cheaper and quicker than resolving them in court. In arbitration, an independent and neutral arbitrator is selected by both parties to hear both sides, resolve the dispute, and make an award if appropriate.
"What types of claims and/or disputes are subject to arbitration?
"All disputes, claims, and disagreements of any kind or nature that arise out of, or are related in any way to[,] the summary of benefits are subject to arbitration, unless a mutually agreed upon settlement can be reached.
"Is arbitration binding?
"Yes, arbitration is binding on all parties, it is the only way to resolve all claims and disputes under the summary of benefits. This means that all disagreements are resolved only by binding arbitration. There will be no trial in front of a judge or jury."
The record does not contain a copy of any of the documents concerning the disability policy that Denson says were provided to her.
[2] Even if Brown and Brown Solutions had argued that they were entitled to compel Denson to arbitrate her claims against them on a theory that those claims were intertwined with her claims against Unum, this Court has held that "[t]he concept of `intertwining' necessarily presupposes that the signatory to the arbitration agreement is or will be engaged in an arbitration proceeding with the plaintiff." Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540, 545 (Ala.2000) (emphasis added). In their motion to compel arbitration, Brown and Brown Solutions state: "Denson has already arbitrated her case against the principal, Unum Life Insurance Company." As we also stated in Kennedy,"[I]ntertwining requires at least two threads to weave together  one cannot intertwine a single thread." Id.
[3] We note that Denson's argument that the transaction at issue in this case did not "substantially affect" interstate commerce relies upon Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000), which was overruled by the United States Supreme Court in Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). See Service Corp. Int'l v. Fulmer, 883 So.2d 621 (Ala.2003).
[4] Section 27-7-1(5), Ala.Code 1975, defines an insurance producer as "[a] person required to be licensed under the laws of this state to sell, solicit, or negotiate insurance."
[5] The same policy and reasoning require that Denson arbitrate her claims against Brown, because avoiding arbitration merely by asserting claims against an agent instead of against the principal  i.e., against Brown, Unum's agent, and not against Unum  circumvents the federal policy in favor of arbitration. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)("`any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'")(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).
[6] See Auvil, 806 So.2d at 346 ("We hold that the application did not incorporate by reference the form containing the arbitration agreement previously signed by Duane [the husband] and that the arbitration agreement does not bind Amy [the wife], who did not sign the document containing it and who does not base her claims or her damages on that document. Therefore, the trial court correctly denied Auvil's motion to compel Amy to arbitrate her claims.").
[7] Auvil, 806 So.2d at 350 ("four of these eight post-Gray cases according a nonsignatory agent the right to compel arbitration either rely or may rely on express inclusive language in the arbitration agreements").
[8] Auvil, 806 So.2d at 350 ("Thus, we first observe that the language of the arbitration agreement does not include Auvil as a beneficiary. The terms of the arbitration agreement benefit and bind only the parties.").
[9] Cf. Ex parte Gray, supra, 686 So.2d at 251 (holding that the purchaser of an automobile must arbitrate his claims against the dealership and salesman based on the following language in the arbitration agreement: "all disputes and controversies of every kind and nature between myself and Crown Pontiac Nissan, Inc., arising out of or in connection with the purchase of this vehicle by me, will be resolved by arbitration"); Stevens v. Phillips, 852 So.2d 123, 125-26 (Ala.2002) (requiring that the plaintiff's claims against a salesperson be arbitrated, even though the dealership was not named as a defendant, based on the language in the arbitration agreement that "[a]ny controversy or claim between or among you and me or our assignees arising out of or relating to this contract or any agreements ... be determined by arbitration"); ECS, Inc. v. Goff Group, Inc., 880 So.2d 1140, 1146 (Ala.2003) (holding that a nonsignatory could enforce the arbitration clause because the agreement provided that "any dispute arising out of this Agreement ... shall be submitted to the decision of a board of arbitration").