ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Calhoun County Circuit Court found Charles Stacy Rimmer guilty of one count of sexual battery of a child younger than fourteen years old and one count of neglect of a child. Rimmer appeals and argues that there is insufficient evidence to support the jury’s conclusion that he is guilty of sexual battery. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. This case stems from Rimmer’s interaction with a young teenage girl named Amanda Doe.[1] Rimmer met Amanda and her mother, Pamela Doe, after he moved to Slate Springs, Mississippi, during the summer of 2005. Rimmer was thirty-six years old at that time. Amanda’s twenty-one-year-old sister, Susan Smith, introduced Rimmer to her mother and Amanda, who was twelve years old at the time.
¶ 3. Pamela and Amanda occasionally cleaned Rimmer’s apartment. Testimony at trial indicated that Rimmer sometimes paid Pamela with money — at other times he paid her with drugs. Pamela and Rim-mer often smoked marijuana together. Pamela allowed Amanda to smoke marijuana with them. Amanda testified that it was not unusual for Pamela to “pass out” due to her consumption of alcohol and prescription medications that Pamela obtained from Rimmer.
¶ 4. Meanwhile, Rimmer and Amanda became closer. When school started, Rim-mer bought some of Amanda’s school supplies. Rimmer also bought clothes for Amanda. At one time, he had provided a cell phone for her to use. On one occasion, Rimmer took Amanda to “get her hair cut and her nails done.” Amanda spent five hours in the salon. Rimmer waited for her the entire time. He also paid the $155 fee for those services. Rimmer and Amanda did not tell Pamela about their trip to the salon.
¶ 5. On Valentine’s Day 2007, Rimmer bought Amanda a dozen roses and “a big, white basket full of teddy bears and candy.” Amanda’s father, Leonard Smith, who was divorced from Pamela, asked Rimmer why he would send such gifts to his fourteen-year-old daughter. Rimmer claimed he bought Amanda the roses and other gifts because he was like a second father to Amanda.
¶ 6. However, in March 2007, Amanda accused Rimmer of having sexual contact with her on multiple occasions. Amanda also accused Rimmer of providing her and two of her younger friends, Bailey Jones and Catherine Mason, with drugs. Amanda further accused Rimmer of encouraging her and her friends to dance provocatively while under the influence of the drugs that he had given them. On March 23, 2007, Amanda gave a statement to Deputy Dean Poynor of the Calhoun County Sheriffs Department. A short time later, Catherine and Bailey also gave statements.
¶ 7. The record does not specify exactly when, but some time between being arrested and indicted, Rimmer filed a petition for writ of habeas corpus or, alternatively, to set bail. Rimmer’s petition is not included in the record presently before us. In any event, on September 11, 2007, the circuit court conducted a hearing on Rimmer’s petition. Amanda and Bailey testified during that hearing. Their testimonies will be addressed in the analysis portion of this opinion. Suffice it to say, *1189 portions of their testimonies are central to Rimmer’s argument on appeal.
¶ 8. On May 16, 2008, a Calhoun County grand jury returned a twelve-count indictment against Rimmer. The indictment included two counts of sexual battery of a child under the age of fourteen and three counts of sexual battery of a child “at least fourteen (14) but under sixteen” years old. The indictment also included seven counts of neglect of a child. Two of those counts charged Rimmer with giving Amanda and Bailey, who was eleven years-old at the time, the drug Methylenedioxymeth-amphetamine — often referred to as “ecsta-cy” — and then encouraging them to “perform sexual conduct by dancing in [their underwear] ... and telling them to kiss and touch each other in th[eir] private area[s].” Two other counts charged Rim-mer with similar conduct regarding Amanda and Catherine, who was twelve years old. Yet another charge accused Rimmer of giving Bailey a Xanax tablet and encouraging her to engage in explicit behavior with Amanda. Rimmer was also charged with giving Amanda ecstacy and encouraging her to dance provocatively in her underwear. Finally, Rimmer was charged with giving Catherine marijuana.
¶ 9. On January 13, 2009, Rimmer’s trial began. For brevity’s sake, we will address pertinent matters that occurred at trial in the analysis below. The jury found Rim-mer guilty of two charges that were included in the twelve-count indictment. Specifically, the jury found Rimmer guilty of one count of sexual battery of a child younger than fourteen years old and one count of neglect of a child. Incident to Rimmer’s conviction for sexual battery of a child younger than fourteen years old, the circuit court sentenced Rimmer to thirty years in the custody of the Mississippi Department of Corrections with five years suspended. The jury also found Rimmer guilty of one count of “child neglect.”[2] For that conviction, the circuit court sentenced Rimmer to ten years in the MDOC with three years suspended. The circuit court ordered the sentences to run concurrently.
ANALYSIS
SUFFICIENCY OF THE EVIDENCE
¶ 10. After the prosecution rested its case-in-chief, Rimmer moved for a directed verdict. The circuit court denied Rimmer’s motion. Rimmer then presented his case. The prosecution did not call any rebuttal witnesses and finally rested. Rimmer then renewed his motion for a directed verdict. Again, the circuit court denied Rimmer’s motion.
¶ 11. Rimmer claims the circuit court erred. In so doing, Rimmer claims there was insufficient evidence to support the jury’s verdicts. Rimmer’s brief on appeal does not specify whether he takes issue with one or both of the charges for which he was convicted. However, the substance of Rimmer’s argument is directed solely toward his conviction for sexual battery. We are mindful of our standard of review under the circumstances. As the Mississippi Supreme Court has stated:
*1190 [I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
Bush v. State, 895 So.2d 886, 843 (¶ 16) (Miss.2005) (internal citations and quotations omitted). This Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Id. (internal citations and quotations omitted).
¶ 12. Rimmer’s entire argument is based on the central premise that the inconsistencies in Amanda’s testimony — in the form of prior inconsistent statements and contradictions to the testimonies of other witnesses — completely discredit any notion that he committed sexual battery against Amanda. According to Rimmer, Amanda fabricated the charges against him in retaliation for his interfering in her relationship with her boyfriend. Rimmer’s position is that his conviction for sexual battery is the result of “the scorn of a wrongful accuser, in this case, a troubled teenaged girl with a history of drug abuse.”
¶ 13. Rimmer’s theory stems from events that occurred during February 2007. In August 2006, Amanda began dating Alex Harris, who is approximately her age. In February 2007, Alex and Amanda were involved in a dispute. According to Amanda, Alex and Rimmer’s son, Chase, who was slightly older than Amanda, had been drinking alcohol at Rimmer’s house. Amanda testified that she did not like how Alex was acting, so she “popped” him. Alex retaliated and slapped Amanda. After that altercation, Rimmer recommended that Pamela prohibit Amanda from seeing Alex. Pamela later suspected that Amanda was secretly communicating with Alex. Because she did not know how to review the text messages in Amanda’s cellular phone, Pamela asked Rimmer to do so. Witness testimony indicated that Pamela confronted Amanda with the text messages, and a heated argument ensued. Bobby Hodge, a neighbor, testified that he and Rimmer had to separate Pamela and Amanda because they were pushing and shoving each other. According to Hodge, Amanda turned to Rimmer and told him “you are f — ed.” That occurred approximately one month before Amanda brought charges against Rimmer. According to Rimmer, the inconsistencies in Amanda’s testimony, as compared to her previous statement and her testimony at the habeas hearing renders her accusations unbelievable. Rimmer also claims that Amanda’s testimony contradicted the statement and testimony of Bailey, the eyewitness to the *1191 sexual battery charge for which he was convicted.
¶ 14. Rimmer acknowledges that the Mississippi Supreme Court has held as follows:
the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized. The victim’s physical and mental condition after the incident, as well as the fact that the incident was immediately reported is recognized as corroborating evidence.
Wilkins v. State, 1 So.3d 850, 853 (¶ 10) (Miss.2008) (citation omitted). Rimmer was charged with sexual penetration of a child “under the age of fourteen.” Amanda’s fourteenth birthday was in July 2006.[3] Rimmer draws our attention to the fact that there were inconsistent accounts of when he had inappropriate sexual contact with Amanda. In her statement from March 2007, Amanda said that, on or about November 1, 2006, Rimmer touched her inappropriately by performing oral sex on her after he had given her an ecstacy tablet. During the habeas hearing that occurred approximately five months later, Amanda again said Rimmer had performed oral sex on her sometime around November 1, 2006. Amanda was fourteen years old during November 2006. However, at trial, Amanda testified that Rimmer performed oral sex on her during the summer of 2005.
¶ 15. Bailey consistently stated that: (a) she was at Rimmer’s apartment on the night that Rimmer performed oral sex on Amanda, and (b) she saw Rimmer’s head between Amanda’s legs. Her recollection of the date of that event was not consistent. In her written statement from March 23, 2007, Bailey indicated that it happened during the summer of 2006. During the habeas proceeding, Bailey testified that it occurred “about two years ago,” when she was eleven years old and Amanda was thirteen years old. Accordingly, Bailey placed the event at issue sometime during the summer of 2005. On cross-examination during the habeas proceeding, Bailey agreed that it actually occurred during the summer of 2006. At trial, Bailey testified that she saw Rimmer performing oral sex on Amanda during June 2006. Bailey testified that she remembered the date because she was baptized the next day. Amanda would have been thirteen years old at that time.
¶ 16. The jury heard every inconsistent version of events. Amanda and Bailey were both cross-examined extensively regarding their inconsistent recollections of the date Rimmer had performed oral sex on Amanda. The fact remains that, considering the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the jury’s conclusion that Rimmer had performed oral sex on Amanda when she was thirteen years old. Bailey corrected herself when she testified during the habeas hearing. She testified that she witnessed Rimmer with his head between Amanda’s legs during the summer of 2006, although she did not testify that she witnessed that event in June 2006. At trial, Bailey was more specific. She testified that she witnessed Rimmer performing oral sex on Amanda in June 2006-when Amanda was thirteen years old and she was eleven years old. *1192 Portions of Amanda’s testimony corroborated Bailey’s recollection. On redirect, the prosecution asked Amanda when it was that she and her friends were “going over [to Rimmer’s apartment] a bunch.” Amanda answered, “2006.” Amanda also specified that she was thirteen years old when Rimmer had performed oral sex on her. Both Amanda and Bailey were thoroughly cross-examined regarding the inconsistent recollections of the date of the event at issue. The jury resolved those inconsistencies. “[M]inor inconsistencies between [a victimj’s testimony and that of other witnesses were matters of credibility to be weighed and resolved by the jury.” Wilkins, 1 So.3d at 854 (¶ 10).
¶ 17. Rimmer notes that Amanda did not immediately report that he had touched her inappropriately. However, Amanda explained that she did not instantly report Rimmer’s conduct because she was afraid of him. Amanda further explained that she had ample reason to be afraid of Rimmer because he had beaten up her uncle and her older sister’s boyfriend, who required medical treatment due to his injuries received at Rimmer’s hands. Additionally, Rimmer notes that in January 2007, Amanda gave him a thank-you card in recognition of the ways in which Rimmer had helped her and her mother. Rimmer argues that such behavior is inconsistent with someone who has been sexually abused. Amanda explained why she gave Rimmer a thank-you card. She testified that her mother instructed her to do so. Amanda also testified that she was afraid Rimmer might harm her if he realized she was no longer being friendly toward him.
¶ 18. Rimmer also notes that Amanda and Bailey inconsistently recalled who was present before and/or at the time that Bailey found Rimmer performing oral sex on Amanda. There were many consistencies in Bailey’s and Amanda’s testimonies. They consistently testified that the evening began at Rimmer’s apartment. They consistently testified that they went to Rimmer’s apartment with Amanda’s older sister, Susan, and Susan’s boyfriend. Bailey and Amanda both testified that they were given ecstasy tablets that night. They both testified that they were encouraged to take off their clothes and dance provocatively in their underwear. Finally, they both testified that Rimmer performed oral sex on Amanda later that night.
¶ 19. During the habeas hearing, Amanda testified that Susan and Susan’s boyfriend were not present when she and Bailey were dancing in their underwear. She further testified that she was not certain whether one of Rimmer’s friends, Jeremy Broughman, was present when they were dancing in their underwear. At trial, Amanda explained that Susan and Susan’s boyfriend had been at Rimmer’s house, but they left and went back to Susan’s house. Amanda testified that she and Bailey went to Susan’s house at the same time. According to Amanda, Broughman later went to Susan’s house and, unknown to Susan and Susan’s boyfriend, Broughman asked Amanda and Bailey to come back to Rim-mer’s house. Amanda went on to testily that, after Susan and Susan’s boyfriend fell asleep, she and Bailey sneaked out and went to Rimmer’s house. At that time, Rimmer gave her and Bailey ecstasy. She and Bailey later took off their clothes and danced in their underwear. Amanda testified that Rimmer and Broughman encouraged her and Bailey to kiss each other. According to Amanda, Broughman and Rimmer put money in her and Bailey’s underwear.
¶ 20. During the habeas hearing, Bailey testified that Susan and Susan’s boyfriend were also at Rimmer’s house when she and Amanda were dancing in their underwear. *1193 According to Bailey’s habeas hearing testimony, neither Susan nor Susan’s boyfriend did anything to intervene when Rimmer and Broughman put money in her and Amanda’s underwear. At trial, however, Bailey’s testimony corroborated Amanda’s testimony for the most part. Unlike Amanda’s version of events, Susan, rather than Rimmer, gave her ecstasy.
¶ 21. Again, the jury heard the inconsistencies Rimmer references. The jury resolved those inconsistencies, as well as the credibility of the witnesses, when it found Rimmer guilty. The jury also acquitted Rimmer on ten of the twelve charges he faced. The jury also heard the testimonies of witnesses who corroborated portions of Amanda’s testimony. For example, two witnesses testified that they had been working in the salon when Rim-mer took Amanda there. They also testified that Rimmer had waited for Amanda for the entire five hours that she was in there. Finally, they testified that Rimmer paid for the $155 in fees for the salon’s services. Along with the corroborating testimony from Bailey, the jury acted according to its discretion when it found Amanda to be credible when she testified that Rimmer had touched her inappropriately. Viewing the evidence in the light most favorable to the prosecution, we cannot find that the circuit court abused its discretion when it denied Rimmer’s renewed motion for a directed verdict. We, therefore, find no merit to this issue.
¶ 22. THE JUDGMENT OF THE CALHOUN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SEXUAL BATTERY, AND SENTENCE OF THIRTY YEARS WITH FIVE YEARS SUSPENDED AND TWENTY-FIVE YEARS TO SERVE AND COUNT VII, NEGLECT OF A CHILD, AND SENTENCE OF TEN YEARS WITH THREE YEARS SUSPENDED AND SEVEN YEARS TO SERVE, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CALHOUN COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.

. We use aliases for the victim, her family, and the two young witnesses in this case to protect their anonymity.

. The indictment charged Rimmer with seven counts that alleged violations of Mississippi Code Annotated section 97 — 5—39(l)(c) (Rev. 2006). Section 97-5-39 is titled as ”[c]on-tributing to the neglect or delinquency of a child; felonious abuse and/or battery of a child.” Section 97-5-39(1 )(c) provides as follows:
A parent, legal guardian or other person who knowingly permits the continuing physical or sexual abuse of a child is guilty of neglect of a child and may be sentenced to imprisonment for not more than ten (10) years or to payment of a fine of not more than Ten Thousand Dollars ($10,000.00), or both.

. We can resolve this issue by referencing the month in which Amanda was born. Because it is not necessary to mention the date on which Amanda was born, we refrain from doing so to further protect her anonymity.