LEE, P.J.,
for the Court:
PROCEDURAL HISTORY
¶1. Robert Forrest Jr. was found guilty in the Circuit Court of Lincoln County of two counts of touching a child for lustful purposes. On Count I, he was ordered to serve fifteen years in the custody of the Mississippi Department of Corrections, with twelve years to serve and three years’ probation. On Count II, he was ordered to serve a five-year suspended sentence and five years’ probation. The sentences were ordered to run consecutively with no possibility of early release or parole. Forrest was also ordered to pay court costs and a $10,000 fine. He must register as a sex offender upon his release from incarceration.
¶ 2. Forrest now appeals, asserting two issues: (1) the verdict is against the overwhelming weight of the evidence, and (2) his sentence was excessive. Finding no error, we affirm.
FACTS
¶ 3. On December 12, 2006, Sheila Hy-num, a part-time deputy with the Lincoln County Sheriffs Department, met with Mary[1] and her parents at the Lincoln County Sheriffs Department. Mary, who was ten years old at the time, told Officer Hynum that her forty-one-year-old uncle, Forrest, had exposed himself to her and fondled her. Mary stated that she spent the night with Forrest and his wife, and Mary slept on an air mattress. According to Mary, when her aunt went to take a shower, Forrest laid down next to her and began rubbing her stomach. He then put his hand down the front of her pants. Forrest denied this'occurred. Forrest and his wife testified that Mary complained of a stomach ache. They asked her if she wanted some medicine, and she declined. Forrest’s wife testified that she left the bathroom door open while she was taking a shower so she could hear Mary and Forrest talking.
¶ 4. Mary related that on another occasion she and Forrest were riding four-wheelers. She told him that she needed to go to the bathroom. She stood on one side of the four-wheeler to urinate, and Forrest went into the woods. When she stood up and turned around, Forrest was exposing himself to her. Mary stated that Forrest told her not to tell her parents. She also stated that Forrest told her that now that she had seen him undressed he could walk around the house naked in.front of her. Forrest denied that he said this or that he intentionally exposed himself to her. Forrest testified that he told Mary to stay on one side of the four-wheeler while he uri *38 nated in the woods on the opposite side. He said Mary got up and looked in his direction, and he covered himself as quickly as possible. He said he scolded her for looking on the other side of the four-wheeler. Mary stated that she turned and looked because Forrest was talking to her.
¶5. After interviewing Mary, Officer Hynum contacted the Mississippi Department of Human Services. A family-protection specialist interviewed Mary. Bente Johnson, executive director of the Child Advocacy Center, also interviewed Mary. The interview was recorded on video tape. During the interview, Mary recounted the two incidents described above.
¶ 6. Mary testified at tidal. She again recounted the two incidents described above. She also told of a third incident in which Forrest inappropriately touched her, exposed himself, and rubbed himself against her. Mary’s mother had reported this incident to the, investigators approximately six weeks after the initial investigation took place. During this incident, Mary stated that she was lying in bed between her aunt and Forrest. She normally would have slept on the air mattress, but a friend of Forrest’s child was spending the night and using the air mattress. According to Mary, her aunt was facing the wall doing a crossword puzzle. Mary testified that Forrest put his arm around her and put his other hand in his underwear. He then rubbed his penis on her leg. According to Mary, her aunt told Forrest to get off Mary when she noticed his behavior, but then her aunt turned over and went to sleep. Forrest’s wife denied this occurred.
¶ 7. Mary’s mother and one of Mary’s teachers testified that Mary’s demeanor noticeably changed during the fall of 2006. Mary’s teacher testified that Mary became withdrawn and began to complain about physical ailments. Mary no longer wanted to visit Forrest and his wife, and she became standoffish about leaving her home. She became moody and angry. Forrest’s wife told Mary’s mother that Mary refused to ride the four-wheeler at their house. Mary’s mother found this uncharacteristic of Mary and confronted her about it. When asked why she would not ride the four-wheeler, Mary responded, “I can’t tell you; you’ll die.” Mary later told her mother about the incidents with Forrest. Forrest was found guilty of lustfully touching Mary in the bed and on the air mattress. The jury was not instructed on the incident regarding the four-wheeler.
DISCUSSION
I. WEIGHT OF THE EVIDENCE
¶ 8. Forrest argues that the verdict is not supported by the evidence because the testimony presented by the State was unreliable and contradictory.
¶ 9. The Mississippi Supreme Court has stated the standard of review regarding the weight of the evidence as follows:
When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather ... the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among *39 the jurors themselves. Instead, the proper remedy is to grant a new trial.
Bush v. State, 895 So.2d 886, 844 (¶ 18) (Miss.2005) (internal citations and quotations omitted). A challenge to the weight of the evidence “is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)).
¶ 10. After the initial interview on December 13, 2006, the investigation was delayed until January 2, 2007, because of the holidays. Forrest argues this gave the family an opportunity to embellish the allegations. On February 5, 2007, Mary’s mother reported that Mary had told her that Forrest inappropriately touched her while she, Forrest, and his wife were in bed together. This was the same incident Mary testified to at trial. Forrest argues that this new information was suspect because Mary did not tell Officer Hynum or the social-services investigator about the incident in the bed. Forrest also takes issue with the inability of the child to pinpoint a date when the incidents occurred. When asked how long it had been since the four-wheeler incident happened, Mary indicated it had been “a couple of months.” The indictment states that the time period of the charges was between October 1, 2006, and November 30, 2006.
¶ 11. Forrest argues that Mary’s mother manufactured testimony for Mary, and her own testimony contradicted the other witnesses’ testimonies. Forrest called Phyllis Ravencraft, a family friend, to testify. Ravencraft testified that Mary’s mother approached her in a store sometime after Christmas in 2006. Mary’s mother told Ravencraft not to go to Forrest’s house anymore because Forrest had molested Mary. Ravencraft testified that her children were present in the store as well as Mary. Ravencraft told Mary’s mother that she did not believe her, and Mary’s mother became agitated. Mary’s mother denied this conversation occurred.
¶ 12. The argument presented by Forrest amounts to a conflict in the evidence. “The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed.” Smith v. State, 3 So.3d 815, 818 (¶ 13) (Miss.Ct.App.2009) (quoting Ford v. State, 737 So.2d 424, 425 (¶ 8) (Miss.Ct.App.1999)).
¶ 13. The jury heard testimony over the course of two days from Mary, Mary’s mother, Forrest, Forrest’s wife, the investigating officers, and other witnesses. Mary was questioned as to why she did not initially tell the investigators about the incident in the bed, and she stated that she had forgotten. The jury also heard Forrest’s argument that Mary’s mother had invented the entire story and that Mary had complied because she was scared of her mother. Weighing the evidence in the light most favorable to the verdict, we cannot find that the trial court abused its discretion in denying the motion for a new trial. The verdict is not against the overwhelming weight of the evidence, and we find that allowing it to stand would not sanction an unconscionable injustice. This issue is without merit.
II. SENTENCE
¶ 14. Forrest concedes that the sentence he received was within the statutory guidelines. However, he argues that because he had no-prior criminal history, he should not have been denied the possibility of early release or parole. This issue was not raised at the time of sentencing. It is well settled that issues not raised before *40 the trial- court are procedurally barred on appeal. Foster v. State, 716 So.2d 538, 540 (¶7) (Miss.1998).
 ¶ 15. Notwithstanding the procedural- bar, we find that this issue is without merit. Forrest was found guilty of two counts of Mississippi Code Annotated section 97-5-23(1) (Rev.2006), which provides for a sentence of “not less than two (2) years nor more than fifteen (15) years.... ” “Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.” Hoops v. State, 681 So.2d 521, 537-38 (Miss.1996). Forrest’s convictions carried a possible thirty-year sentence. His sentence of twelve years to serve followed by three years’ probation and a five-year suspended sentence was within the statutory guidelines. Forrest argues that the trial court failed to consider statements from several witnesses asking for leniency at the sentencing hearing. He also argues that the trial court failed to consider that he had no prior crimes on his record. Forrest does not argue that the sentences were disproportionate to the crimes charged. We find Forrest’s arguments, if not procedurally barred, are also without merit. The trial court did not abuse its discretion as Forrest’s sentence was within the statutory guidelines.
¶ 16. As for Forrest’s argument that he should be eligible for- early release or parole, it is statutory that sex-crime offenders are not eligible for early release or parole. Miss.Code Ann. § 47-7-3(l)(b) (Supp.2010) (Sex-crime offenders “shall not be released on parole except for a person under the age of nineteen (19) who has been convicted under Section 97-3-67 ....”) and Miss.Code Ann. § 47-5-139(l)(d) (Rev.2004) (Sex-crime offenders are not eligible for earned-time allowance.). This issue is procedurally barred and without merit.
¶ 17. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, TOUCHING A CHILD FOR LUSTFUL PURPOSES, AND SENTENCE OF FIFTEEN YEARS WITH TWELVE YEARS TO SERVE AND THREE YEARS OF PROBATION, AND COUNT II, TOUCHING A CHILD FOR LUSTFUL PURPOSES, AND SENTENCE OF FIVE YEARS SUSPENDED AND FIVE YEARS OF PROBATION, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH NO POSSIBILITY OF EARLY RELEASE OR PAROLE, AND TO PAY A $10,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ, CONCUR.

. The Court of Appeals declines to identify minor victims of sexual crimes. In the interest of the child's privacy, the minor's name has been substituted with an alias.